Sgarlat, Appellant, *v.* Kingston Borough Board of Adjustment.

Argued January 4, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Neville B. Shea,* for appellants.

*William J. Fahey,* Solicitor, for Kingston Borough, appellee.

*Wanda P. Chocallo,* Assistant Attorney General, with her *David Stahl,* Attorney General, for Water and Power Resources Board, appellee.

OPINION BY MR. JUSTICE COHEN, May 7, 1962:

This is an appeal from the final decree of the court en banc of Luzerne County affirming the refusal of appellee, Board of Adjustment of Kingston Borough (Board), either to grant appellants' request for a zoning variance or to declare the relevant zoning ordinance unconstitutional.

In 1936, Frank B. Sgarlat, individual appellants' father and predecessor in title purchased the tract of land at issue in these proceedings. The tract consisted of more than nine acres of unimproved brush land which is flooded annually by the adjacent Susquehanna River. Bounding one side of the land is a dike constructed in 1914 or 1915 to afford flood control protec-' tion. Several hundred feet to the east of this tract, separated by another property, is located a sand and gravel preparation plant owned by appellants.

In 1928, almost eight years before appellants' predecessor purchased the land in question, Kingston Borough adopted a general zoning ordinance. By the terms of the ordinance, the land in question was placed in a General Residence District in which permitted uses included farming, gardening, nurseries and greenhouses.

When Frank B. Sgarlat died testate in 1937, appellants acquired title to the property. Later the same

year, appellants received notice from the Water and Power Resources Board of the Commonwealth that a dike was to be built on a portion of their land. This new dike, completed in 1938, bounds appellants' property on two sides.

At present, appellants own 5.589 acres of the original 9.260 acre tract. The Sgarlat tract is now completely landlocked, and, apparently, cannot be excavated because any such digging would endanger the dike system. The surrounding property includes a general residential area to the north of the tract; unimproved brush land of the same general type as the Sgarlat land to the east and south, and a sanitary land-fill site to the west of the site.

No agreement concerning compensation for the land utilized for the dike was ever reached, but some negotiations were conducted. A resolution of condemnation was not adopted by the Commonwealth until 1955. The resolution condemned 2.498 acres of the tract.

In early 1956, a petition for the appointment of viewers to assess damages was filed by the Commonwealth. In the proceedings before the viewers, appellants attempted to introduce evidence pertaining to the commercial value of the top soil and sand and gravel deposits in the land condemned. The Commonwealth maintained that since the land was zoned for General Residence purposes, only its value within that classification was pertinent in ascertaining damages. Thereupon, appellants challenged the constitutionality of the zoning ordinance.

The board of view declined to pass on that issue. It held that as an administrative board it could not question the ordinance collaterally, and decided that appellants must pursue their remedy in a proceeding brought in accordance with the provisions of the zoning ordinance. The Board's position was sustained by the court en banc which granted a stay of all further

proceedings in the condemnation case until appellants could bring a zoning action.

To test the constitutionality of the ordinance, appellants subsequently applied for a permit to excavate top soil, sand and gravel from the tract. The permit was refused by the proper borough official, who, on appeal, was affirmed by the Board. Appellants then appealed to the court of common pleas, and a referee was appointed to hear evidence. The referee's report sustaining the Board was adopted by the hearing judge. Following argument of exceptions to the decree nisi, the court en banc entered a final decree affirming the trial judge. This appeal followed.

The appeal must be dismissed. Appellants prosecuted their request for an excavation permit and a variance solely to contest the validity of the zoning ordinance and, thereby, hopefully, to establish their right to higher damages resulting from the acquisition of part of their property for construction of the new dike. Admittedly, they have no interest in ever digging the land. As appellants stated in their petition for appeal to the court of common pleas from the decision of the Board, "The petitioners, however, herewith disavow any intention of using the permit if it should be granted, and *their only purpose in requesting the issuance of the permit is to obtain a judicial determination that their land is to be valued as top soil and sand and gravel land in the condemnation proceeding aforesaid.*" (Emphasis supplied).

Since appellants indicate they have no intention of ever using the permit, the question of whether the permit and the variance should be granted is fictitious and, accordingly, need not be decided. By this litigation appellants only want our aid in determining the value which should be attached to the land in the condemnation proceedings. In its brief, the Commonwealth correctly stated, "Our courts concern themselves

merely with facts and actual controversies. Their obligations do not include deciding moot, hypothetical, fictitious and abstract principles of law. This is well settled law." See *Salisbury Township v. Sun Oil Company*, 406 Pa. 604, 179 A. 2d 195 (1962); *Excellent Laundry Co. v. Szekeres*, 382 Pa. 23, 114 A. 2d 176 (1955), and *Faust v. Cairns*, 242 Pa. 15, 88 Atl. 786 (1913).

This part of the litigation should never have arisen. There was no need for the lower court in the condemnation action to have stayed proceedings in order to have the constitutionality of the zoning ordinance determined through resort to the zoning procedure.

In making their findings, the viewers, "having viewed the premises and examined the property, shall hear all parties interested and their witnesses, and shall estimate and determine the value of the property taken . . ." Act of 1919, July 15, P.L. 976, §4 (71 PS §1574) incorporated by reference into Flood Control Act of 1936 [March 10, 1937, P.L. 43, §1], 32 PS §663. Evidence relating to any factors which affect the value of the property in question is relevant for consideration by the viewers in awarding damages or assessing benefits. See *Gardner v. Allegheny County*, 393 Pa. 120, 142 A. 2d 187 (1958); *Powell Appeal*, 385 Pa. 467, 123 A. 2d 650 (1956). In *Powell Appeal*, we said "While the Act [State Highway Law of 1945, June 1, P.L. 1242, §§301 to 308, 36 P.S. §§670-301 to 308] does not expressly authorize viewers to decide questions other than such as relate to land values or damages or benefits to the affected property, *it is implicit that a jury of view must decide all relevant questions of law or fact before it can competently make an award of damages or assessment of benefits*: see Case of the Germantown and Perkiomen Turnpike Road Company, 4 Rawle *191." (385 Pa. at 471-472). (Emphasis sup-

plied). See also, *Hartzfeld v. Snyder Township School District*, 403 Pa. 632, 170 A. 2d 355 (1961).

Were the above reasons insufficient, we still would be constrained to dismiss this appeal. There is serious doubt in our minds whether appellants have proper standing to maintain this action for the 2.498 acre part of the land included in the flood control project. Appellants allege that there has not been any taking to this time and they are still the proper title holders of the property. Since a consideration of this question is not necessary for a determination of this appeal, and since the record and briefs are inconclusive on the point, we do not propose to dispose of it in the present decision except to indicate our considerable misgivings concerning the validity of appellants' position.

Finally, were we not to dismiss this appeal, we would affirm the lower court's determination that the ordinance is a valid exercise of the police power and, therefore, constitutional, and that appellants have not established their right to a variance. As we held in *Cresko Zoning Case*, 400 Pa. 467, 162 A. 2d 219 (1960), the power to grant a variance is to be sparingly exercised and only under peculiar and exceptional circumstances. Such circumstances are lacking here.

Appeal dismissed.

Mr. Chief Justice BELL and Mr. Justice EAGEN concur in the result.