## Hart Appeal.

440

Argued January 10, 1963.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Philip R. Detwiler,* for appellants.

*Alan E. Boroff,* with him *Morris Gerber,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, March 19, 1963:

This is an appeal from the affirmance by the Court of Common Pleas of Montgomery County, of an order of the Zoning Board of Adjustment of Upper Dublin [Board], granting, as a special exception, permission to operate a non-commercial swim club.

Appellants are residents and taxpayers of the township and unsuccessful protestants before the Board.

Appellees are the equitable owners (under an agreement of sale) and applicants for the special exception. Three public hearings were held before the Board, and after receiving and considering the testimony of appellants and protesting township residents, the Board granted the application.

The special exception permits the operation of a non-commercial swim club and related facilities on a 5.15 acre portion of a larger (9.13 acre) tract, known as the "Royal Oaks" property located in a district zoned "A" residential. The land proposed to be used is at the rear of the main building or tavern (known as Royal Oaks Tavern, Restaurant, or Inn) and abuts a portion of a public highway by-pass. Embankments along some of the by-pass border are approximately 25 feet above the premises. No homes are closer than several hundred feet from the intended swim club site.

In the operation of the swim club, it is proposed to utilize facilities already on the premises, a restaurant, club room, bath house with locker rooms, showers, snack bar, swimming pool, wading pool, and a new swimming pool 30 by 75 feet in area with an additional 25 by 25 feet diving well to be constructed.

The Royal Oaks tract has been zoned residential since the initial zoning ordinance became effective on June 20, 1939. The tavern (or restaurant) has been in operation since at least 1945. In 1952, the township granted a building permit for the construction of locker rooms and showers on the site in question. Although the application for the building permit described the use of the building as an "Inn", it was for several years thereafter operated as a swim club (probably separately from the restaurant).[1] Sometime in

---

[1] On two occasions during 1956, the group operating the club applied to the Board for permission to enlarge the swim club facilities, and both applications were denied.

the fall of 1959, the tavern and club facilities were closed as a result of action taken by the Internal Revenue Service.

The swim club is to be operated by a non-profit corporation authorized to issue 300 shares of $25 par value stock. The by-laws provide that eligibility for membership requires the purchase of one share of stock, and no member is permitted to purchase more. Although the membership may not exceed 300 families, the club intends to limit membership to 200 families. However, the Board, in granting the special exception, restricted the number to 175 families.[2] In addition to the purchase of stock, membership would be subject to an annual assessment of approximately $125 to $150 per family to cover the costs of operating the club.

Appellees are under contract to purchase the property for $85,000 with $15,000 as a down payment and the mortgage balance to be paid in 15 years. The record owners of the realty are unwilling to sell the property directly to the non-profit corporation because they desire security for their purchase money mortgage obligation, which the non-profit corporation cannot provide. The club site is to be leased to the non-profit corporation for a 15 year term, at an annual rental of $8,000 (annual mortgage payment being $7,500 plus 4% to cover the expense of holding title) with an option to renew for an additional similar term at a substantially lower rental (since mortgage payments will have been completed).

The club is to be operated each year from Memorial Day to Labor Day and plans to enter into a contract

---

[2] Protestants testified that from previous use as a recreational facility in 1952, and thereafter, membership of 250 to 300 "was too many". Other restrictions imposed by the Board are listed in note 3, *infra*.

with two of the three purchasers of the realty, who will manage, supervise and improve the club and its facilities. Each of the managers is to receive an annual salary of $5,000 and is to function under the control and supervision of the club's board of directors.

The township zoning ordinance provides in Sec. 501(3)(F) that non-commercial recreational uses are permitted in "A" residential districts when authorized as special exceptions. Section 501(3)(H), permits club houses, lodges or fraternity houses, provided "that the principal activity shall not be one which is customarily carried on as a business and provided that all services shall be for members and their guests." The Board imposed certain conditions and restrictions,[3] and, as so limited, found, inter alia, that the proposed swim club use is a non-commercial or non-profit recreational use.

The lower court heard no additional testimony and based its determination upon the evidence presented to the Board and upon that record sustained the action of the Board. The sole question here is whether the Board committed a manifest abuse of its discretion or an error of law. *Poster Advertising Co. v. Zoning Board of Adjustment*, 408 Pa. 248, 182 A. 2d 521 (1962).

[3] In addition to restricting membership to 175 families (and limiting family to husband and wife, or an adult parent or parents and their minor children), the Board imposed these further conditions: (1) no more than 50 guests may be permitted, and only members and their families may use facilities; (2) adequate all-weather parking facilities for at least 175 vehicles must be provided in designated area; (3) no public address system or amplified music device of any type may be used; (4) club may operate only between 10 a.m. and 9 p.m.; entire premises to be vacated by 9:30 p.m.; (5) amount of water to be added to pool between June 1st and August 31st is limited; (6) all trees on property must be maintained as a sound and light barrier for the club.

Appellants contend that the Board committed error of law in incorrectly applying the requirements of the zoning ordinance (to the facts before it) and in finding that the proposed swim club is a non-commercial recreational use. Appellees, it is argued, fail to meet the non-commercial or non-profit provisions of the ordinance. Appellants point to the substantial financial gains likely to accrue to appellees as a result of the lease with the non-profit swim club: acquisition of the $85,000 property for the initial investment of $15,000, plus the value of any improvements placed upon the land by the club, and the salaries to be received by two of the appellees for management services. It is vigorously argued that these are characteristics of a purely commercial or profit-making venture and preclude the finding that the club use is non-commercial. In dealing with this contention, the lower court correctly said: ". . . the appellants seem to have confused the *use* of the premises by the swim club and the financial arrangements between the applicants and the swim club. The swim club and the applicants are separate entities and the swim club will not be a profit-making organization. The club's facilities will be used exclusively by the members of the club and not by the public. Upon the record before it, then, the Board of Adjustment properly concluded that the use of the premises by the club will be 'non-commercial'. This is all that is necessary to bring the use within the terms of the ordinance, and the fact that the applicants stand to receive an appreciable gain from this non-commercial use of their property by the swim club, a non-profit corporation, does not render the Board's decision erroneous. There is no requirement in the ordinance that the use be such that no one will profit financially therefrom, and the Board of Adjustment did not commit an error of law in concluding that the proposed use is 'non-commercial'."

It should perhaps be observed that the gains which appellants attribute to appellees are by no means realities, and their possible future realization (even partially) depends upon many uncertain and changing factors involving (among other circumstances) the ability of the non-profit corporation to attract members (up to 175 under the restrictions imposed by the Board) willing to pay annual assessments (for 3 month club privileges) over the 15 year lease term. It is evident that the salaries to be paid under the management contract are not profits or gains to the recipients but rather compensation for services rendered. To conclude that the swim club is a commercial or profit-making venture because the lessors may profit financially is to subject every admittedly non-commercial or non-profit activity or organization to the same challenge because profit may be derived by those who sell goods and services (or rent facilities) to such organizations.

Appellants contend also that the Board abused its discretion in concluding that the proposed use would not adversely affect the safety, health and welfare of the community. Strong emphasis is placed on the testimony of protestants that several years earlier, the operation of the previous swim club resulted in a great deal of noise, littering and other objectionable conditions. The former unpleasant experience may not be attributed to the proposed use, especially in the light of the adequate safeguards taken by the Board in imposing detailed conditions and restrictions for the operation of the club and its finding that the present use would be free of such objections. The record contains no evidence sufficient to support a contrary finding. The burden of proof is not with appellants to show that their use would not adversely affect the health, safety and welfare of the community. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957).

Considerable reliance is placed upon *Kotzin v. Plymouth Township Zoning Board of Adjustment*, 395 Pa. 125, 149 A. 2d 116 (1959) and *Upper Providence Township Appeal*, 403 Pa. 50, 169 A. 2d 47 (1961). Our examination of these cases satisfies us that neither compels or even suggests the conclusion that the proposed swim club is not a non-commercial use or that the Board abused its discretion in granting the special exception. In *Kotzin*, the Board refused special exceptions for a non-commercial recreational swim club and day camp, because it found that granting the application would adversely affect the health, safety and welfare of the community. In *Upper Providence*, the Board denied the special exception for several reasons, including lack of sanitation facilities, traffic congestion, poor access, failure to furnish required survey, and the absence of plan for adequate parking.

In the present proceeding, the Board found no such objections to exist and concluded that granting the special exception was in harmony with the zoning ordinance and its overall objectives. This determination is a proper exercise of the responsibilities entrusted to the Board by the ordinance and we are satisfied that the Board's action was free from manifest abuse of discretion or error of law.

In *Kotzin* and *Upper Providence*, this court approved the action of the Board. Here, too, the Board's determination must be sustained. The order of the lower court is affirmed.