## National Land and Investment Company *v.* Easttown Township Board of Adjustment, Appellant.

Argued April 29, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused January 17, 1966.

*Theodore O. Rogers, Susan P. Windle,* and *Rogers & O'Neill,* for appellant.

*Harold E. Kohn,* for intervenors, appellants.

*J. B. H. Carter,* with him *Holbrook M. Bunting, Jr., Francis X. Hope,* and *Pepper, Hamilton & Scheetz,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, November 9, 1965:

These appeals[1] are taken from an order of the Court of Common Pleas of Chester County[2] which held un-

---

[1] Appeals in the nature of a certiorari were allowed pursuant to Rule 68½.

[2] *Appeal of Nat'l Land & Inv. Co.,* 13 Chest. 4 (1964).

constitutional a provision of the Easttown Township zoning ordinance which required a minimum area of four acres per building lot in certain residential districts in the township. Before reaching the significant zoning question presented in this case, however, several procedural issues raised by the township[3] must first be considered in order to determine if the issue is properly before us.

## I. Procedural Questions

A chronological recitation of the relevant history of the tract involved in these appeals will best reveal the procedural posture of this controversy. In 1958, appellee, Dorothy M. Ennis, took title to approximately 130 acres of land in Easttown Township known as "Sweetbriar".[4] After selling 45 acres of that tract, Miss Ennis executed an agreement of sale in 1961 with National Land and Investment Company ("National") for the remaining 85 acres of "Sweetbriar". Under this agreement, purchase by National was contingent upon the suitability of the land for development purposes and the acceptance by Easttown Township, under its zoning regulations, of a subdivision plan which would be prepared for the tract.

At the time of the purchase agreement, the zoning for "Sweetbriar", as well as for the vast majority of the township, required a one acre minimum area for each building lot.[5] Subdivision plans for one acre lots

---

[3] Appeals were taken from the decision of the court of common pleas by Easttown Township and Harold and Edith Kohn, intervenors. For convenience, appellants will occasionally be referred to as "the township".

[4] Miss Ennis is the titleholder for the real owner of "Sweetbriar" who is not a party to this proceeding.

[5] This Court upheld the constitutionality of the Easttown Township one acre minimum requirement in *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment*, 393 Pa. 62, 141 A. 2d 851 (1958).

on "Sweetbriar" were submitted to the township in late 1961[6] but were not pursued[7] for the likely reason that in early 1962 an amendment to the zoning ordinance imposed upon the land a minimum area requirement of four acres.

Instead of perfecting its subdivision application, National filed with the township a request for a building permit to construct a single dwelling house on a one acre lot of the "Sweetbriar" tract. This request was refused by the township zoning officer for the reason that the land area was insufficient under the four acre zoning requirement and because no plan for a subdivision, of which this house was to be but a part, had been approved. In his letter of refusal dated April 27, 1962, the zoning officer advised National's counsel that National could "appeal . . . [its] case for a variance" to the board of adjustment. Within five days after receiving the refusal, National's attorney replied that National was taking an appeal to the board of adjustment "for a variance from the terms of the Ordinance." A hearing was scheduled for June 15, 1962, but was postponed because the board of adjustment was unable to muster a quorum for the meeting.

The matter remained in abeyance for six months until October 30, 1962, at which time new counsel for National asked for a hearing on the appeal and submitted a "statement of appeal" which, for the first time, challenged the constitutionality of the four acre minimum zoning and abandoned any pretext of seeking a variance.

-------

[6] National expended approximately $6,000 preparing this tract for subdivision. Plans were actually prepared and presented both by National and another company which planned to purchase one acre lots from National and do the actual building in the subdivision.

[7] There is no dispute that the subdivision applications were deficient in that they contained neither an offer of dedication nor a performance bond.

510

At the board of adjustment hearing on December 7, 1962, a motion to quash the appeal was made by the township based on the ground that the board of adjustment could not entertain the appeal from the denial of the building permit because (1) the appeal was not taken within a "reasonable time", and (2) no subdivision plan for "Sweetbriar" had been approved.

The board of adjustment granted the motion to quash on the ground that no subdivision plan had been approved and because of its conviction that an attack on the constitutionality of a zoning ordinance did not belong before the board of adjustment but, rather, before a court of common pleas "or other qualified judiciary."

National appealed from the ruling to the Court of Common Pleas of Chester County which reversed the board's decision and remanded the case so that testimony on the substantive issues could be taken.[8] Appellants ask us to review and reverse that procedural determination, thereby making it unnecessary for us to reach the merits of the zoning question presented in the case.

Appellants first urge that the appeal to the board of adjustment from the action of the zoning officer was not taken within a "reasonable time"[9] and therefore

---

[8] *Appeal of Nat'l Land & Inv. Co. (No. 1)*, 11 Chest. 436 (1963), reversal upheld on reargument, 11 Chest. 439 (1963).

[9] The Second Class Township Code provides that "such appeal [by a person aggrieved by the zoning ordinance or actions taken pursuant to the ordinance by the zoning officer] shall be taken within a reasonable time as provided by the rules of the board...." Act of May 1, 1933, P. L. 103, §2007(d), added by Act of July 10, 1947, P. L. 1481, §47, as most recently amended by Act of August 25, 1959, P. L. 753, No. 266, §1, 53 P.S. §67007(d) (Supp. 1964). The Easttown Township Board of Adjustment made no rules defining "reasonable time" so that the question of timeliness must be decided simply on the basis of the vague standard of reasonableness set forth in the enabling act.

should have been dismissed. Although National notified the board of adjustment of its appeal within a week after the building permit was refused, it simply advised the board that it would seek a variance. Not until six months later was the board informed that the appeal would attack the constitutionality of the ordinance in general. For this reason, the township argues that the appeal was not taken until six months after the denial of the building permit and that such delay constituted an unreasonable amount of time. We can not accept appellants' contention in this regard.

Our cases permit one who petitions for a variance to a board of adjustment to challenge before the board or thereafter on appeal to the court of common pleas the constitutionality of the zoning ordinance. *Eller v. Bd. of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964) ; see *Anstine v. Zoning Bd. of Adjustment,* 411 Pa. 33, 190 A. 2d 712 (1963) ; *Di Santo v. Zoning Bd. of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963) ; *Schmalz v. Buckingham Twp. Zoning Bd. of Adjustment,* 389 Pa. 295, 132 A. 2d 233 (1957). This being so, there is no justification for denying appellees the right to shift the emphasis of the attack *prior* to the hearing before the board of adjustment.

In essence, an application for a variance implies a challenge to the legality of the zoning ordinance as it applies to a specific piece of property. See *Forest Hills Borough Appeal,* 409 Pa. 392, 187 A. 2d 166 (1963) ; *Colligan Zoning Case,* 401 Pa. 125, 162 A. 2d 652 (1960) ; *Baronoff v. Zoning Bd. of Adjustment,* 385 Pa. 110, 122 A. 2d 65 (1956) ; *Garbev Zoning Case,* 385 Pa. 328, 122 A. 2d 682 (1956). Zoning is permitted when exercised for the promotion of the health, safety, morals or general welfare of the community. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114 (1926) ; *Cleaver v. Bd. of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964) ; *Archbishop O'Hara's Appeal,* 389

Pa. 35, 131 A. 2d 587 (1957). Such an exercise of the police power, however, may, in applications of the ordinance to specific properties, impose upon the owner of such properties an "unnecessary hardship". When so applied, the ordinance can not be termed a reasonable or constitutional exercise of the police power. To preserve the validity of the zoning ordinance in its application to the community in general, therefore, the variance provision of the enabling act functions as an "escape valve" so that when regulations which apply to all are unnecessarily burdensome to a few because of certain unique circumstances, a means of relief from the mandates of the ordinance is provided. See *Peirce v. Zoning Bd. of Adjustment*, 410 Pa. 262, 267, 189 A. 2d 138, 141 (1963) ; *Colligan Zoning Case*, 401 Pa. 125, 131-32, 162 A. 2d 652, 655 (1960). It can be understood, then, if a request for a variance is denied, indicating that there is nothing about petitioner's land or his hardship that is any different than that of everyone else with land similarly zoned, then petitioner's most logical next step is to attack the validity of the ordinance as it applies to everyone. See *Anstine v. Zoning Bd. of Adjustment*, 411 Pa. 33, 190 A. 2d 712 (1963) ; *Sylvester v. Pittsburgh Zoning Bd. of Adjustment*, 398 Pa. 216, 157 A. 2d 174 (1959) ; *Best v. Zoning Bd. of Adjustment*, 393 Pa. 106, 141 A. 2d 606 (1958) ; *Schmalz v. Buckingham Twp. Zoning Bd. of Adjustment*, 389 Pa. 295, 132 A. 2d 233 (1957) ; *Dunlap Appeal*, 370 Pa. 31, 87 A. 2d 299 (1952). In other words, a challenge to the validity of a zoning ordinance is a natural and foreseeable outgrowth of a request for a variance.

Appellees in this case did not wait for their request for a variance to be denied, probably realizing full well that there was nothing unique about their property which would have justified special treatment. Their decision to attack the constitutionality of the ordinance

at the board of adjustment hearing does not constitute an appeal separate and distinct from the appeal requesting a variance and, this being the case, was filed within a reasonable time after the denial of their request for a building permit.

We would be particularly reluctant to quash the appeal for untimeliness in this case in view of the fact that some of the delay was due not to any action or inaction on the part of appellees, but due to the inability of the board of adjustment to garner a sufficient number of its members to hold a hearing when initially scheduled. Surely appellees should not be penalized for a delay resulting from circumstances for which they were not responsible.

In light of the above considerations, we are unable to conclude that the court below, in finding that the appeal was filed within a reasonable time, abused its discretion or committed an error of law.[10]

Appellants next assert that this suit was not prosecuted by a real party in interest. We do not agree. National Land expended in excess of $6,000 in seeking to develop this land. The Second Class Township Code permits appeals by anyone aggrieved by the decision of a zoning official enforcing the provisions of the zoning ordinance.[11] That National was so aggrieved by the refusal to grant the building permit which it sought would be difficult to deny. In addition, there is in ef-

---

[10] The board of adjustment, preferring to rest its decision to quash the appeal on other grounds, did not deal with the question of timeliness. However, the court of common pleas faced the question and found no merit in appellants' position. We will only reverse the decision of the court below if it evidenced a manifest abuse of discretion or an error of law. *Cleaver v. Bd. of Adjustment*, 414 Pa. 367, 380, 200 A. 2d 408, 416 (1964).

[11] Act of May 1, 1933, P. L. 103, §2007(d), added by Act of July 10, 1947, P. L. 1481, §47, as most recently amended by Act of August 25, 1959, P. L. 753, No. 266, §1, 53 P.S. §67007(d) (Supp. 1964).

fect between National and Miss Ennis an agreement of sale of the property based upon contingencies already mentioned. We have held on numerous occasions that such equitable owners qualify as parties in interest. *Kubia Appeal*, 396 Pa. 109, 151 A. 2d 625 (1959); *O'Neill v. Phila. Zoning Bd. of Adjustment*, 384 Pa. 379, 120 A. 2d 901 (1956); *Silverco, Inc. v. Zoning Bd. of Adjustment*, 379 Pa. 497, 109 A. 2d 147 (1954); see *Hart Appeal*, 410 Pa. 439, 189 A. 2d 167 (1963); *Catholic Cemeteries Ass'n Zoning Case*, 379 Pa. 516, 109 A. 2d 537 (1954). See also *Richman v. Zoning Bd. of Adjustment*, 391 Pa. 254, 137 A. 2d 280 (1958).[12]

Appellants' final procedural contention is that the appeal to the board of adjustment should have been quashed since no subdivision plan for "Sweetbriar" had been approved. The Second Class Township Code provides that "appeals to the board of adjustment may be taken by any person or township official aggrieved or affected by any provision of the zoning ordinance or by any decision, including any order to stop, cease and desist issued by any administrative officer, hereinafter called the zoning officer, charged with enforcing the provisions of the zoning ordinance."[13] Since one of the grounds for denying the building permit to National in this case was its failure to meet the four acre minimum area requirement of the zoning ordinance, appellees would seem to be entitled to an appeal under the section just quoted. However, appellants invoke

----

[12] In view of the fact that National is a proper party in interest, we need not express an opinion as to whether Miss Ennis, being the record owner of "Sweetbriar" but not the actual owner, would, by herself have had standing to sue. We note, however, that in *Crafton Borough Appeal*, 409 Pa. 82, 185 A. 2d 533 (1962), the titleholder rather than the real owner brought the suit. There is no indication, however, that the Court in that case was presented with the question of whether a titleholder qualifies as a party in interest.

[13] Note 11 supra.

the article of The Second Class Township Code dealing with subdivision approval in support of their contention that the appeal must be quashed. A section of that article[14] provides: "Where subdivision regulations have been adopted under authority of this article, no lot in a subdivision may be sold, *no permit to erect,* alter or repair any building upon land in a subdivision may be issued, and *no building may be erected* in a subdivision, unless and until a subdivision plan has been approved . . . ." (Emphasis supplied.)

Appellants would have us impose this limitation dealing with subdivision control upon the zoning provisions of the Second Class Township Code and the remedies provided thereunder. Although zoning and subdivision control are frequently involved in a single undertaking, we find no justification for restricting the remedies provided under the former with limitations imposed by the latter. The zoning enabling act authorizes the establishment of local zoning ordinances and a remedial process for those aggrieved by their application and enforcement. In the instant case, one of the grounds given for the denial of the building permit was insufficient land area. This was unquestionably a zoning decision from which the enabling act authorizes appeal.

In *Jacobs v. Fetzer,* 381 Pa. 262, 112 A. 2d 356 (1955), this Court held that the Second Class Township Code provided a statutory means by which an ordinance could be tested and that that procedure was exclusive. In that case we denied equity jurisdiction to decide the constitutionality of the zoning ordinance. The dissent in that case objected strenuously to the fact that restricting relief to the statutory procedure would often require vain and futile acts by those aggrieved by a zoning ordinance. Now appellants would

---

[14] Act of May 1, 1933, P. L. 103, §1207-A, added by Act of May 24, 1951, P. L. 370, §16, 53 P.S. §66257.

have us impose further hurdles to be surmounted before a person aggrieved by a zoning decision may contest its validity.

Although there is some dispute as to whether appellants contend that appellees should submit a subdivision plan on the basis of one acre or four acres, requiring either would be to call for a futile act. To compel a plan on the basis of four acre lots would be unrealistic since appellees clearly propose to build on one acre lots. The filing of a one acre subdivision plan would be equally fruitless since, because of the four acre zoning requirement, the permit obviously would be denied. Thus, it can be seen that the problem which must eventually be faced is whether the four acre zoning is valid. To make determination of that issue subject to vain and purposeless, not to mention expensive, procedural exercises would be an unreasonable requirement and one which we will not seriously contemplate in the absence of an explicit legislative direction to do so. In the instant case, the zoning enabling act is quite specific that its provisions are limited to zoning matters and should not be controlled by other provisions of the Code.[15]

Appellants claim that if approval of the subdivision plan is not a prerequisiite to consideration of the zoning question, a developer could avoid the subdivision requirements altogther by submitting plans and seeking building permits for individual lots rather than for an entire subdivision. Clearly no such result will follow. The land and its owner are still bound by the subdivision regulations. The lot and building erected upon it, whatever the lot area, may not be subdivided

---

[15] It would be particularly unfair for us to deny the appeal in the instant case in view of the fact that appellees followed a procedure for testing the validity of the ordinance apparently sanctioned by our decision in *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment*, 393 Pa. 62, 141 A. 2d 851 (1958).

until a subdivision plan has been approved under the subdivision provisions of the Second Class Township Code. Otherwise, the owner-subdivider will be guilty of a misdemeanor and subject to both fine and imprisonment.[16]

Appellants' reliance upon *Home Life Ins. Co. v. Bd. of Adjustment*, 393 Pa. 447, 143 A. 2d 21 (1958), is not justified. In that case, the plaintiff company simply applied for a variance which would have allowed it to erect apartment buildings upon its land in a residential district. The company did not apply for a building permit nor did it submit any plans for an apartment house. After denial of the variance by the superintendent of building inspection, the company appealed to the board of adjustment challenging the constitutionality of the zoning ordinance. On appeal to this Court we said: "The appellant would have us rule that any property owner may assail a zoning ordinance as being unconstitutional even though the owner had not been denied any particular use of his property which he had sought and, in fact, had no present plans with regard to its use. This would be to hold the ordinance unconstitutional in vacuo which, as often declared, a court will not do." 393 Pa. at 452, 143 A. 2d at 24.

Clearly that is not the situation in the present case. Appellees here submitted a plan of the proposed dwelling house and the lot on which they wish to build. They sought a building permit on the basis of these plans and were refused at least in part on the ground that the plan failed to comply with the zoning ordinance. Appellees followed the procedure set forth in the zoning ordinance and were entitled to seek relief from the adverse decision of the zoning officer.

---

[16] Act of May 1, 1933, P. L. 103, §1208-A, added by Act of May 24, 1951, P. L. 370, §16, 53 P.S. §66258.

Reliance upon *Sgarlat v. Kingston Borough Bd. of Adjustment,* 407 Pa. 324, 180 A. 2d 769 (1962), is similarly misplaced. In that case, appellants' land was being assessed in an eminent domain proceeding. Appellants maintained that in assessing the value of their land, the commercial value of the top soil and sand and gravel deposits should have been considered. Since the zoning did not permit removal of such deposits, the Commonwealth argued that the value of the deposits was not a relevant factor.

In order to test the constitutionality of the ordinance, the owners applied for a permit to excavate the mineral deposits from the tract. This permit was refused and on appeal to this Court we dismissed on the ground that since appellants admitted that they had no intention to use the permit if granted, the question raised was fictitious and therefore did not have to be decided.

Quite obviously the situation in the present case is different. There is no proof that appellees do not plan to build on this tract of land. The mere fact that they may wish to go further and develop the entirety of "Sweetbriar" does not prevent us from deciding the zoning question. Of course, if they do decide to go further, appellees will be required to satisfy the relevant requirements before proceeding.

Having now determined that appellees followed the proper procedural path for the adjudication of their greivance under the zoning ordinance, we turn to the merits of this case.

## II. Validity of Four Acre Zoning

Easttown Township has an area of 8.2 square miles devoted almost exclusively to residential use. It is traversed in the north by the Main Line of the Pennsylvania Railroad as well as by U. S. Route 30, a heavily traveled highway which emanates in Philadel-

phia, 20 miles to the east, and heads west to Lancaster and eventually to the West Coast. It is along this strip that the township's sole commercial activity is conducted and where its two small industrial concerns are located.

The township finds itself in the path of a population expansion approaching from two directions. From the east, suburbs closer to the center of Philadelphia are reaching capacity and residential development is extending further west to Easttown. In addition, a market for residential sites is being generated by the fast growing industrial-commercial complex in the King of Prussia-Valley Forge area to the north of Easttown Township.

Easttown's vital statistics provide a good indication of its character. At present, about 60% of the township's population resides in an area of about 20% of the township. The remaining 40% of the population occupies the balance of about 80% of its area. Privately imposed restrictions limit lot areas to four, five and ten acre minimums on approximately 10% of the total area of the township, consisting of land located in the southern and western sections. Of the total 5,157 acres in the township, some 898, or about 17%, have been restricted by the new zoning ordinance to minimum lots of two acres. Approximately 1,565 acres composing about 30% of the township are restricted by the zoning ordinance to lots of four acres minimum area. About 5% of the population live in the areas zoned for two and four acre sites which together constitute about 47% of the township. Some 1,835 acres, representing about 35% of the township, remain unaffected by the new zoning and continue, under the township's original zoning classification, to be zoned for building sites with a minimum area of one acre.

Before 1959 most of the northeast quadrant of the township, as well as various other areas, had either

been built up or prepared for development. In 1959 sporadic developments occurred in the south and central parts of the township, followed by several others in the south and southeast portions in 1960. In 1961 other developments occurred in the northeast and southwest sections, followed by lesser numbers in smaller areas of the north and central sections in 1962 and 1963.

U. S. Census figures show that Easttown's population grew from 2,307 in 1920 to 6,907 in 1960. As of April, 1963, the population estimate was 8,400. Public school population through the sixth grade grew from 498 in the school year 1955-56 to 1,052 in the school year 1963-64 and, as projected, will be about 1,680 in 1969-70.[17]

New residential construction from 1951 through the first eight months of 1963, a twelve year period, consisted of 1,149 units at an estimated cost of about $21,000,000, with an average of 100 building permits annually. At this rate of growth, allowing four persons per housing unit in Easttown,[18] its population, related to new residences, would grow under the previous one acre minimum zoning at the rate of about 400 persons per annum.

Despite the growth and development of Easttown Township, much of the land in the central, southern and western sections continues to be held in parcels of considerable acreage. "Sweetbriar", located on the southern boundary of the township, is one of these large parcels. There is discussion in the briefs as to

---

[17] The witnesses who testified to the school population projection were unable to say whether it was made on the basis of one acre minimum-zoning or whether it was made on the basis of the amended zoning plan featuring one, two, and four acre sites.

[18] U. S. Census figures from 1960 show 210,680 inhabitants in Chester County with an average of 3.5 individuals occupying each of the county's 58,947 housing units.

whether the township, and particularly those sections zoned for four acres, is rural. Such semantic disputes are of little relevance in zoning cases since realities, rather than the label which, for convenience sake, is applied to them, are determinative of the issue. However, if a catch-all designation is to be applied, "semi-rural" or "estate rural" probably best describes the portions of the township zoned for minimum lots of four acres.

The task of considering the Easttown Township zoning ordinance and passing upon the constitutionality of its four acre minimum area requirement as applied to appellees' property is not an easy one. In the span of years since 1926 when zoning received its judicial blessing,[19] the art and science of land planning has grown increasingly complex and sophisticated. The days are fast disappearing when the judiciary can look at a zoning ordinance and, with nearly as much confidence as a professional zoning expert, decide upon the merits of a zoning plan and its contribution to the health, safety, morals or general welfare of the community. This Court has become increasingly aware that it is neither a super board of adjustment nor a planning commission of last resort. See *Di Santo v. Zoning Bd. of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963) ; *Joseph B. Simon & Co. v. Zoning Bd. of Adjustment,* 403 Pa. 176, 168 A. 2d 317 (1961). Instead, the Court acts as a judicial overseer, drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies. *Tidewater Oil Co. v. Poore,* 395 Pa. 89, 149 A. 2d 636 (1959). The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. For this rea-

---

[19] See *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114 (1926) ; *White's Appeal,* 287 Pa. 259, 134 Atl. 409 (1926).

son, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it. *Cleaver v. Bd. of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964); *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment,* 393 Pa. 62, 141 A. 2d 851 (1958).

While recognizing this presumption, we must also appreciate the fact that zoning involves governmental restrictions upon a landowner's constitutionally guaranteed[20] right to use his property, unfettered, except in very specific instances,[21] by governmental restrictions. The time must never come when, because of frustration with concepts foreign to their legal training, courts abdicate their judicial responsibility to protect the constitutional rights of individual citizens. Thus, the burden of proof imposed upon one who challenges the validity of a zoning regulation must never be made so onerous as to foreclose, for all practical purposes, a landowner's avenue of redress against the infringement of constitutionally protected rights.

The oft repeated, although ill defined, limitation upon the exercise of the zoning power requires that zoning ordinances be enacted for the health, safety, morals or general welfare of the community. See *Cleaver v. Bd. of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964). Such ordinances must bear a substantial relationship to those police power purposes. *Glorioso Appeal,* 413 Pa. 194, 196 A. 2d 668 (1964); *Sylvester v. Pittsburgh Zoning Bd. of Adjustment,* 398 Pa. 216, 157

---

[20] See U. S. Const. amend. V; U. S. Const. amend. XIV; Pa. Const. art. I, §1; Pa. Const. art. I, §10.

[21] A man's use of his own property may be restricted (1) if he violates any provision of the state or federal constitution; or (2) if his use creates a nuisance; or (3) if he violates any covenant, restriction or easement; or (4) if he violates any valid laws, including zoning regulations. See *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533 (1951).

A. 2d 174 (1959). Regulations adopted pursuant to that power must not be unreasonable, arbitrary or confiscatory. *Eller v. Bd. of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964).

The zoning enabling act being silent as to a right of appeal, we consider this case on broad certiorari, reviewing the testimony, the evidence, and the entire record. *Keystone Raceway Corp. v. State Harness Racing Comm'n,* 405 Pa. 1, 173 A. 2d 97 (1961); *Schmidt v. Philadelphia Zoning Bd. of Adjustment,* 382 Pa. 521, 114 A. 2d 902 (1955). Because the court below took no additional testimony, we will look at the decision of the board of adjustment to determine if, in upholding the constitutionality of the four acre minimum zoning, the board committed an abuse of discretion or an error of law. *Upper Providence Twp. Appeal,* 414 Pa. 46, 198 A. 2d 522 (1964).

There is no doubt that in Pennsylvania, zoning for density is a legitimate exercise of the police power. See *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment,* 393 Pa. 62, 141 A. 2d 851 (1958); *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97 (1956). Every zoning case involves a different set of facts and circumstances in light of which the constitutionality of a zoning ordinance must be tested. Therefore, it is impossible for us to say that any minimum acreage requirement is unconstitutional per se. See Annot., 95 A.L.R. 2d 716 (1964).[22]

The relative advantages of a one acre lot over a one-half acre lot are easy to comprehend. Similarly, a two acre lot has advantages over a one acre lot and

---

[22] Both appellants and appellees refer us to cases in other jurisdictions which have both sustained and invalidated the type of low density zoning at issue in the present case. While we accept those cases for the proposition that four acre zoning is not per se unconstitutional, we consider them of little value on the specific issues involved here.

three acres may be preferred over two acres or ten acres over three. The greater the amount of land, the more room for children, the less congestion, the easier to handle water supply and sewage, and the fewer municipal services which must be provided. At some point along the spectrum, however, the size of lots ceases to be a concern requiring public regulation and becomes simply a matter of private preference. The point at which legitimate public interest ceases is not a constant one, but one which varies with the land involved and the circumstances of each case.

We turn, then, to the question of the constitutionality of a four acre minimum in the factual context of the instant case. Quite obviously, appellees will be deprived of part of the value of their property if they are limited in the use of it to four acre lots.[23] When divided into one acre lots as originally planned, the value of "Sweetbriar" for residential building was approximately $260,000. When the four acre restriction was imposed, the number of available building sites in "Sweetbriar" was reduced by 75% and the value of the land, under the most optimistic appraisal, fell to $175,000. The four acre minimum greatly restricts the marketability of this tract because, with fewer potential lots, the cost of improvements such as curbing, streets and other facilities is thus greater on each lot. In addition, each building lot being larger, the cost per lot is automatically increased. The desire of many buyers not to be burdened with the upkeep of a four acre lot also makes "Sweetbriar", so restricted, less desirable. Although there was some evidence in the record that lots of four

---

[23] The mere fact that appellees suffer an economic loss is not sufficient reason to declare the zoning unconstitutional. *Tidewater Oil Co. v. Poore*, 395 Pa. 89, 149 A. 2d 636 (1959). Nevertheless, it is relevant to consider the economic effect of a zoning restriction on the landowner as an aspect of assessing the constitutionality of the ordinance. See Annot., 95 A.L.R. 2d 716, 732-34 (1964).

acres or more could eventually be sold, it is clear that there is not a readily available market for such offerings.

Against this deprivation of value, the alleged public purposes cited as justification for the imposition of a four acre minimum area requirement upon appellees' land must be examined. Appellants contend that the four acre minimum is necessary to insure proper sewage disposal in the township and to protect township water from pollution. At present, only a very small portion of the township in the densely populated northern section is served by a sewage system. The remainder of the lots in the township utilize on-site sewage disposal. With regard to water supply, the evidence was fairly conclusive that the Philadelphia Suburban Water Company serves most, if not all, of the township and that it would furnish water to a development in "Sweetbriar".

A past president of the Devon Citizens Association testified that tests had been conducted which allegedly showed evidence of pollution in township streams and bodies of water. However, neither the results of these tests nor the testimony of those who made them were ever introduced. Under the circumstances, this line of testimony must be ignored.

The matter of pollution was also discussed by the township engineer. In this regard it is significant to note that although it is claimed that sewage and drainage problems were discussed prior to the zoning now in question, the report submitted to the township supervisors by the planning commission never mentioned these as problems which their recommendation for upzoning was designed to meet.

The township engineer's testimony on the subject of drainage and sewage was vague and unconvincing, consisting, as it did, of the bald statement that he felt that there was a danger of pollution. In addition, this

opinion was based upon the hypothetical case of the *entire* township being developed on the basis of one acre lots *maximum,* a situation very unlikely to occur in the near future and probably never.

We can not help but note also that the Second Class Township Code provides for establishing sanitary regulations which can be enforced by a "sanitary board" regardless of the zoning for the area.[24] The Code also provides for the installation and maintenance of sewer systems[25] but the township has made no plans in this regard. In addition, under the township subdivision regulations, the zoning officer may require lots larger than the minimum permitted by the zoning ordinance if the result of percolation tests upon the land show that a larger land area is needed for proper drainage and disposal of sewage. These legislatively sanctioned methods for dealing with the sewage problem compel the conclusion that a four acre minimum is neither a necessary nor a reasonable method by which Easttown can protect itself from the menace of pollution.

In addition to the alleged problem of sewage disposal as justifying the four acre minimum, appellants cite the inadequacy of township roads and the burden which continued one acre zoning for the entire township would impose upon that road system.

As an adjunct to their argument regarding the inadequacy of the road system, appellants maintain that the four acre minimum zoning is warranted because of the difficulty of providing fire protection over the township roads. Because of the narrowness of the

---

[24] Act of May 1, 1933, P. L. 103, §1901-A et seq., added by Act of March 22, 1956, P. L. (1955) 1323, §1 et seq., 53 P.S. §66951 et seq.

[25] Act of May 1, 1933, P. L. 103, §1501 et seq., added by Act of July 28, 1941, P. L. 567, §1 et seq., as amended, 53 P.S. §66501 et seq.

roads, their winding nature and the volume of traffic which they presently bear, a fire official responsible for the portion of Easttown Township in which "Sweetbriar" is located testified that difficulty is frequently encountered in getting equipment to a fire.

Except for the four-lane U. S. Route 30, most of the roads in the township, including the state roads, are two lanes wide having cartways ranging from 14 to 18 feet. Many are winding, some are hilly, and in some locations trees planted within the rights of way overhang so as to slow or even partially impede some types of traffic. While some of the roads, most notably U. S. Route 30 and to a lesser extent Waterloo Road, have already reached their practical capacity at peak hours, not all of them have. It is not clear that any, except for the two above-mentioned, have done so based upon daily average traffic. Church Road, on which "Sweetbriar" abuts, has not.

According to the experts produced for both sides, Easttown's present road network as a whole is capable, with normal maintenance and improvement, of serving a population up to 13,000. This is 4,600 more than the population of the township in April, 1963. On the basis of the former one acre zoning, resulting in a population increase of 400 persons per year, that figure would not be reached until after 1972 or later.

It can be seen, therefore, that the restriction to four acre lots, so far as traffic is concerned, is based upon possible future conditions.[26] Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be used by those officials as an instrument by which they

---

[26] "We must determine the reasonableness of the regulation as it applies to conditions *now existent." Schmalz v. Buckingham Twp. Zoning Bd. of Adjustment*, 389 Pa. 295, 302, 132 A. 2d 233, 236 (1957).

may shirk their responsibilities. Zoning is a means by which a governmental body can plan for the future—it may not be used as a means to deny the future.[27] The evidence on the record indicates that for the present and the immediate future the road system of Easttown Township is adequate to handle the traffic load. It is also quite convincing that the roads will become increasingly inadequate as time goes by and that improvements and additions will eventually have to be made. Zoning provisions may not be used, however, to avoid the increased responsibilities and economic burdens which time and natural growth invariably bring.[28]

It is not difficult to envision the tremendous hardship, as well as the chaotic conditions, which would result if all the townships in this area decided to deny to a growing population sites for residential development within the means of at least a significant segment of the people.

The third justification for rezoning, and one urged upon us most assiduously, deals with the preservation of the "character" of this area.[29] The photographic

---

[27] "*Any* traffic increase with its attendant noise, dirt, danger and hazards is unpleasant, yet, such increase is one of the 'inevitable accompaniments of suburban progress and of our constantly expanding population' which, *standing alone*, does not constitute a sufficient reason to refuse a property owner the legitimate use of his land . . . ." *Archbishop O'Hara's Appeal*, 389 Pa. 35, 54, 131 A. 2d 587, 596 (1957).

[28] Cf. *Archbishop O'Hara's Appeal*, 389 Pa. 35, 55-56, 131 A. 2d 587, 597 (1957) (expense of municipal improvements which would be required if special exception granted is not relevant to the police power standard upon which the court must rely in granting or denying a special exception).

[29] Zoning may not be sustained *solely* on the basis of aesthetic considerations. See *Rogalski v. Upper Chichester Twp.*, 406 Pa. 550, 178 A. 2d 712 (1962). See also *Anstine v. Zoning Bd. of Adjustment*, 411 Pa. 33, 43, 190 A. 2d 712, 717 (1963). In the instant case, however, there is nothing inherently unaesthetic about one

exhibits placed in the record by appellants attest to the fact that this is an area of great beauty containing old homes surrounded by beautiful pasture, farm and woodland. It is a very desirable and attractive place in which to live.

Involved in preserving Easttown's "character" are four aspects of concern which the township gives for desiring four acre minimum zoning. First, they cite the preservation of open space and the creation of a "greenbelt" which, as most present day commentators impress upon us, are worthy goals. While in full agreement with these goals, we are convinced that four acre minimum zoning does not achieve the creation of a greenbelt in its technical sense and, to the limited extent that open space is so preserved, such zoning as is here involved is not a permissible means to that end.

By suggesting that the creation of a greenbelt is a purpose behind this zoning, appellants betray their argument that there is a ready market for four acre plots. Only if there is no market for four acre lots will the land continue to be open and undeveloped and a greenbelt created. This, however, would amount to confiscation of the property of Easttown landowners for which they must be compensated.

If the preservation of open spaces is the township objective, there are means by which this can be accomplished which include authorization for "cluster zoning" or condemnation of development rights with compensation paid for that which is taken. A four acre minimum acreage requirement is not a reasonable method by which the stated end can be achieved.

Next, the township urges us to consider the historic sites in the township and the need to present them in the proper setting. We are unmoved by this

---

acre zoning which makes it less desirable than four acre zoning. For this reason, "character zoning" involves considerations which differ somewhat from those involved with zoning for aesthetics.

contention since it appears to be purely and simply a makeweight. First, an examination of the map of historical sites in the township demonstrates that the overwhelming majority of such sites, located in areas of dense population, can hardly be provided with proper settings by four acre zoning elsewhere in the township. Appellants cite two main historic places of interest. One is the home of General Anthony Wayne, a Revolutionary War hero. It is significant to note, however, that the township supervisors placed the Wayne home in a district zoned for only two acre minimum lots. The second historic site is Old Swedes Church which is not located in the township but whose cemetery is. It appears that both the Wayne home and the church are surrounded by land to protect them. In any event, the beautification of several structures of minor historical significance neither calls for nor legitimatizes the imposition of low density zoning of the magnitude here contemplated upon 30% of the township.

Closely related to the goal of protecting historic monuments is the expressed desire to protect the "setting" for a number of old homes in Easttown, some dating back to the early days of our Commonwealth. Appellants denominate this goal as falling within the ambit of promoting the "general welfare". Unfortunately, the concept of the general welfare defies meaningful capsule definition and constitutes an exceedingly difficult standard against which to test the validity of legislation. However, it must always be ascertained at the outset whether, in fact, it is the *public* welfare which is being benefited or whether, disguised as legislation for the public welfare, a zoning ordinance actually serves purely private interests.

There is no doubt that many of the residents of this area are highly desirous of keeping it the way it is, preferring, quite naturally, to look out upon land

in its natural state rather than on other homes. These desires, however, do not rise to the level of public welfare. This is purely a matter of private desire which zoning regulation may not be employed to effectuate.

Appellants make some attempt to impose upon this area an aura of historic significance which deserves the protection of the township. Of course, the fact that these houses are old makes them architecturally and historically interesting. But it does not justify the creation of a special setting for them. They are all privately owned; most are already surrounded by substantial land holdings which, if their owners so desire, serve as protection against being "fenced in" by new residential development. In addition, there is nothing about south Easttown which differentiates it from any other area in the southeastern section of Pennsylvania. Surely, no one would seriously maintain that the entire southeast corner of the state should be declared immune from further development on areas of less than four acres simply because there are many old homes located there.

The fourth argument advanced by appellants, and one closely analogous to the preceding one, is that the rural character of the area must be preserved. If the township were developed on the basis of this zoning, however, it could not be seriously contended that the land would retain its rural character—it would simply be dotted with larger homes on larger lots.

Appellants point to the fact that the surrounding townships have similar low density zoning provisions. Although the zoning of the surrounding area is frequently a relevant consideration in assessing the validity of a zoning regulation, see *Kubia Appeal*, 396 Pa. 109, 151 A. 2d 625 (1959); Act of May 1, 1933, P. L. 103, §2003, added by Act of July 10, 1947, P. L. 1481, §47, 53 P.S. §67003, it is not controlling on the issue presented. This is particularly so when we are deal-

ing with a unique zoning classification such as is involved here. With most zoning classifications, there can be little question as to their suitability in any political subdivision; the only issue concerns their placement. With these classifications, the surrounding zoning is particularly relevant. As the classification itself becomes more questionable, however, similar classifications in surrounding districts become of less significance in supporting the validity of the restriction.

The briefs submitted by each appellant in this case are revealing in that they point up the two factors which appear to lie at the heart of their fight for four acre zoning.

The township's brief raises (but, unfortunately, does not attempt to answer) the interesting issue of the township's responsibility to those who do not yet live in the township but who are part, or may become part, of the population expansion to the suburbs. Four acre zoning represents Easttown's position that it does not desire to accommodate those who are pressing for admittance to the township unless such admittance will not create any additional burdens upon governmental functions and services. The question posed is whether the township can stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid. Of course, we do not mean to imply that a governmental body may not utilize its zoning power in order to insure that the municipal services which the community requires are provided in an orderly and rational manner.

The brief of the appellant-intervenors creates less of a problem but points up the factors which sometime lurk behind the espoused motives for zoning. What basically appears to bother intervenors is that a small number of lovely old homes will have to start keeping company with a growing number of smaller, less expensive, more densely located houses. It is clear, however, that the general welfare is not fostered or promoted by a zoning ordinance designed to be exclusive and exclusionary.[30] But this does not mean that individual action is foreclosed. "An owner of land may constitutionally make his property as large and as private or secluded or exclusive as he desires and his purse can afford. He may, for example, singly or with his neighbors, purchase sufficient neighboring land to protect and preserve by restrictions in deeds or by covenants inter se, the privacy, a minimum acreage, the quiet, peaceful atmosphere and the tone and character of the community which existed when he or they moved there."[31]

In light of the foregoing, therefore, we are compelled to conclude that the board of adjustment committed an error of law in upholding the constitutionality of the Easttown Township four acre minimum requirement as applied to appellees' property. We therefore affirm the order of the Court of Common Pleas of Chester County.

Order affirmed.

Mr. Justice JONES dissents.

---

[30] "And, of course, minimum lot areas may not be ordained so large as to be exclusionary in effect and, thereby, serve a private rather than the public interest." *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment*, 393 Pa. 62, 76, 141 A. 2d 851, 858 (1958) ; accord, *Simon v. Needham*, 311 Mass. 560, 42 N.E. 2d 516 (1942).

[31] *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment*, 393 Pa. 62, 94, 141 A. 2d 851, 867 (1958) (dissenting opinion).

534

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority compounds the error made by the court below by also ignoring the fundamental concept of judicial administration that constitutional issues are to be avoided if litigation can be disposed of otherwise.

Appellee, National Land and Investment Company, is a corporation engaged in speculative land development. It agreed to purchase this property in July, 1961. It is not bearing any of the expenses of this litigation, and its only connection with it is permitting its name to continue as the appellee—its agreement has expired and its deposit has been returned. Its counsel, who originally filed the appeal to the court of common pleas from the action of the board of adjustment, has withdrawn from the litigation. Counsel for the seller to National Land, after a delay of many months, pursued the appeal for a variance. The seller is paying the expenses of this litigation and is the only one with an equitable interest in the property. Dorothy Ennis, who also appears as an appellee, is simply a straw party employed in the office of the real owner's counsel. *No one has any real plans to build anything on the property.* All that is really involved in this lengthy and costly litigation is the constitutionality of the zoning ordinance and this is being litigated in vacuo. We should not assume the role of giving an academic or advisory opinion. *Sgarlat v. Kingston,* 407 Pa. 324, 180 A. 2d 769 (1962); *Home Life Insurance Company v. Board of Adjustment,* 393 Pa. 447, 143 A. 2d 21 (1958). Another procedural defect is apparent—the appeal to the zoning board was taken more than six months after the decision of the zoning officer. While it is true that the appeal provisions of the ordinance do not designate a specific number of days during which an appeal may be taken, it is required that an appeal must be filed within a rea-

sonable period. Six months is an unreasonable time, being double the longest time permitting an appeal to this Court from a decision of the court of common pleas. In *Kravitz v. Zoning Board of Adjustment,* 415 Pa. 97, 202 A. 2d 64 (1964), we held that an appeal from a zoning board of adjustment decision not taken within the prescribed period must be quashed. I would apply that rule to this litigation and require the court of common pleas to quash the appeal to the board of adjustment from the zoning officer.

Still another glaring defect in the procedural history of this litigation is the failure of the appellees to comply with §1207-A (May 24, 1951, P. L. 370, §16) of The Second Class Township Code, 53 P.S. §66257, which provides that in townships where subdivision regulations have been adopted, no permit to erect a building may be issued until a subdivision plan has been approved. The effect of the majority opinion is to order the issuance of a building permit for a one acre lot in a subdivision not yet approved. This circumvents the township's lawful regulations adopted pursuant to Art. XII-A of the Second Class Township Code and to that extent nullifies the Township Code. This procedural defect would also require the disposition of this litigation without proceeding to the constitutional question.

The majority recognizes that "The task of considering the Easttown Township zoning ordinance and passing upon the constitutionality of its four acre minimum area requirement as applied to appellees' property is not an easy one." To me it becomes very easy to uphold the constitutionality when one recognizes, as the record discloses, that the legislative authority of Easttown Township gave the overall planning of the township considerable study. The four acre restriction was not applied to the entire township, but was only one part of a three part class "A"

residential zoning enactment—one of four acres, one of two acres, and one of one acre. This zoning determination for type "A" residential properties included 3,297 acres of the 5,157 acre township and included 2,468 acres of undeveloped property for which no public sewage was available and which also included areas of poor natural drainage and varied stream pollution. It seems a reasonable and proper 'exercise of the legislative function for the township commissioners to take what is comparatively a small area (3,297 acres), divide it into residential zones and restrict a certain number of the residential zones to four acre lots—some to two and some to one.

Hence, I differ with the majority in three basic areas: (1) I would never get to the constitutional issue by the exercise of proper judicial restraint; (2) I would not permit this Court to become township supervisors and legislate a zoning law as it does, and (3) I would not hold a properly enacted zoning code to be unconstitutional when the only argument in support of so doing is the appellees' loss of profits.

I dissent.