Belknap
No. 6741

ARTHUR C. FILLMORE v. TOWN OF SANBORNTON

April 30, 1974

*Normandin, Cheney & O'Neil* and *David O. Huot (Mr. Huot* orally) for the plaintiff.

*Wescott, Millham & Dyer (Mr. Peter V. Millham* orally) for the defendant.

PER CURIAM. The issue here is whether or not an applicant for a permit to construct a mobile home park must comply with zoning regulation changes put into effect after he had applied for the permit but before the hearing was held on the application and before the permit was actually denied. After the town board of adjustment denied the permit, the applicant appealed the decision under RSA 31:77 and petitioned the court for a writ of mandamus ordering the town to grant the permit. A Master (*Leonard C. Hardwick,* Esq.) heard the matter and in a report recommended that the writ issue against the town. *Keller,* C.J., approved the report and incorporated the recommendation into a decree. Exceptions to the decree raised by respondent-town were reserved and transferred by *Loughlin,* J.

Petitioner started his project in January 1971 by hiring a surveyor to draw up a preliminary plan of a mobile home park which was to be situated on land petitioner had purchased four to five years previously. The surveyor's preliminary plan was submitted to the town planning board in June 1971 and changes suggested by the board were made in the plan. Petitioner next had a well drilled in order to provide a community water system for the park. The New Hampshire Water Supply and Pollution Control Commission granted its approval both of the well and the project in November 1971. Final plans were then submitted to the San-

bornton Planning Board which held a public hearing and approved the subdivision in December 1971. On December 27, 1971, plaintiff recorded the plan with the Belknap County Registry of Deeds and applied to the town selectmen for a permit to construct the park. This application was referred to the Sanbornton Board of Adjustment which held a hearing on January 31, 1972, and by a letter dated February 2, 1972, denied the permit. The reasons announced by the board for denying the permit were first that the mobile home residents would require school and municipal services disproportionately costly to the other taxpayers of the town and secondly that adjoining farm property and a lake would be contaminated by drainage from the park dwellers' leach fields.

The Sanbornton zoning ordinance provides that mobile home parks, subject to certain requirements, may be established in agricultural or residential areas. In addition to setback requirements and road specifications, the ordinance provides that each mobile home site be at least 5,000 square feet in area and that sanitary regulations promulgated by the State board of health be followed. The ordinance also provides that the board of adjustment, after a public hearing, decide whether or not a permit to establish a mobile home park should be issued.

The proposal for the park provided for lot sizes of 8,000 square feet and for a septic tank and leach bed for every two mobile home sites. The proposed lot size complied with the 5,000 square foot requirement of the ordinance and with division of public health services regulations in effect on December 27, 1971, when application was made to the board of adjustment. The division of public health services, however, changed its regulations such that effective Janaury 3, 1972, lots of at least 10,000 square feet were required for all mobile homes situated in parks. Also, the water supply and pollution control commission indicated in a letter dated December 7, 1971, that for sewage disposal purposes, it recommended lots of at least 24,000 square feet for mobile homes located on Paxton soils and drawing from a community water system. (Evidence from other sources indicated this project might be located at least partially on Paxton soils.) A second letter from the commission, dated February 24,

1972, indicated that, after consulting with the division of public health services, the State agencies would reaffirm their approval of the project, subject to satisfactory soil conditions and in spite of the failure to comply with the new minimum lot sizes.

Petitioner argued and the master ruled that the petitioner was not bound to comply with the changed regulations, but was entitled to a permit on the basis of the regulation applicable at the time of applying for the permit. We disagree. "It is generally held that . . . the filing of an application for a building permit [does not confer] . . . any rights in the applicant or permittee as against a change in the zoning ordinance which imposes further limitations upon the use or structure proposed." 2 A. Rathkopf, The Law of Zoning and Planning § 57-2 (1972); see R.A. Vachon & Son, Inc. v. Concord, 112 N.H. 107, 289 A.2d 646 (1972); Blevens v. Manchester, 103 N.H. 284, 170 A.2d 121 (1961). The requirement in the ordinance of compliance with the state regulations extends to any changes therein. The State revised its regulations only seven days after the application was filed and well before the hearing was held or the decision of the board rendered. Therefore, no argument could be made that consideration of the application was purposefully delayed in order to apply the new regulations or that the regulations were changed in order to stop the project. The permit could be properly denied for failure to comply with the changed regulations. 1 E. Yokely, Zoning Law and Practice §§ 9-5 to 9-8 (3d ed. 1965).

Although the State board of health was referred to in the ordinance and the division of public health services promulgated the regulations in issue, the latter is the statutory successor to the former and its regulations nonetheless apply. RSA 126-A:12. Further, the policy of the State agencies in not applying their own new regulations to this project does not preclude the town from applying them. The State agencies had previously granted their approval under the old regulations and chose not to revoke that approval. The town board of adjustment was reviewing the application for the first time. More importantly, the application to this one project of the old minimum health standards stood to compromise the local

interest of the town far more than it did the statewide policy of the agencies.

*Exceptions sustained; remanded.*