**STEEL HILL DEVELOPMENT, INC.**

v.

**The TOWN OF SANBORNTON, a Municipal Corporation**

**Civ. No. 73-280.**

United States District Court,
D. New Hampshire.

June 25, 1974.

David J. Killkelley, Nighswander, Lord, Martin & Killkelley, Laconia, N. H., for plaintiff.

Peter V. Millham, Wescott, Millham & Dyer, Laconia, N. H., for defendant.

## MEMORANDUM

PETTINE,[*] Chief Judge.

The plaintiff herein challenges the zoning ordinances of defendant Town, alleging that said ordinance, as amended in 1971, violates plaintiff's constitutional rights under the Fifth and Fourteenth Amendments. I need not repeat in great detail the factual background to this case, since the identical parties were involved in a previous law suit challenging the constitutionality of the identical zoning amendments, and the bulk of the underlying factual web of the instant case is concisely developed in Steel Hill Development, Inc. v. Town of Sanbornton, 338 F.Supp. 301 (D.N.H.), aff'd 469 F.2d 956 (1st Cir. 1972). *See also* Judge Bownes' opinion denying defendant's motion to dismiss in the earlier case. Steel Hill Development, Inc. v. Town of Sanbornton, 335 F.Supp. 947 (D.N.H.1971). This series of cases will hereinafter be referred to collectively as "Steel Hill I", with citation to the relevant opinion where necessary. For the purposes of this motion, I need only reiterate a few of the essential facts established in the prior litigation.

The plaintiff corporation is the owner of approximately 500 acres of land acquired in 1969 and located within the Town of Sanbornton. Prior to March 9, 1971, the land owned by plaintiff (the "Steel Hill tract") was entirely within a zoning area requiring a minimum lot size of 35,000 square feet, or about three-fourths of an acre. On March 9, 1971, the defendant, by its Town Meeting, adopted amendments to the zoning ordinance. As a result of these amendments, approximately 70% of the Steel Hill tract is now within a zone requiring 6 acre minimum lot size and approximately 30% in an area zoned for 3 acre minimum lots. As a result of these zoning changes, plaintiff was unable to go forward with its proposed development of the Steel Hill tract, according to a "cluster" plan,[1] to subdivide the tract into 500 to 515 family units comprising a four-season recreation community.

On February 17, 1972, this Court entered judgment for defendant Town finding, on the facts before it, that the zoning amendments were not so arbitrary or unreasonable as to deprive the plaintiff of any rights guaranteed under the United States Constitution. 338 F. Supp. 301. That decision was affirmed, in an opinion written by Chief Judge Coffin, 469 F.2d 956 (1st Cir. 1972).

The instant Complaint was filed on November 9, 1973, alleging that subsequent to the decision in the First Circuit in "Steel Hill I", the plaintiff has altered its plan of development from a four-season recreation community to a mobile home development which allegedly "will fulfill the overwhelming public need in the region for economical housing for all segments of society". Plain-

---

[*] Sitting by designation.

1. As explained in the Circuit Court's opinion, " 'Cluster' zoning modifies lot size and frontage requirements upon certain conditions involving setting aside of land by the developer for parks, schools, or other public needs." 460 F.2d at 958 n. 1.

tiff further alleges that the lot size restrictions incorporated into the zoning ordinance make a mobile home development subdivision prohibitive, that therefore the ordinance is exclusionary, arbitrary, discriminatory, and totally unrelated to the public health, safety, morals and general welfare of the Town. Based on the foregoing allegations, plaintiff claims the ordinance is violative of New Hampshire Revised Statutes Annotated (N.H.R.S.A.) 31:60, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. Plaintiff seeks declaratory and injunctive relief; jurisdiction is alleged under 42 U.S.C. §§ 1983 and 1985.

 Defendant has moved for judgment on the pleadings and for dismissal based on several grounds. A number of the grounds for said motion are identical to issues raised in a similar motion in "Steel Hill I", which motion was denied by Judge Bownes, 335 F. Supp. 947 (D.N.H.1971). As to these grounds, Judge Bownes' reasoning in the earlier case is dispositive, and I need not extensively retrace that legal analysis.[2]

As defendant admits in its memorandum, its motion is based primarily upon the theories of res judicata and collateral estoppel i. e., that the legality and constitutionality of the zoning ordinance of the Town of Sanbornton as it applies to plaintiff were previously decided in "Steel Hill I" as affirmed by the First Circuit. It is to this issue that the Court now addresses its attention.

### Res Judicata

 It is basic to the law of judgments that if, subsequent to the entry of a particular judgment, events occur which alter the legal relations of the parties, the earlier judgment will not serve as a bar by estoppel to a redetermination of the issues in light of the changed circumstances. See International Shoe Machinery Corp. v. United Shoe Machinery Corp., 315 F.2d 449, 455 (1st Cir.), cert. denied, 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963); Atwood v. Rhode Island Hospital Trust Co., 34 F.2d 18, 23 (1st Cir. 1929), cert. denied 280 U.S. 600, 50 S.Ct. 81, 74 L.Ed. 646; Lasasso v. Lasasso, 1 N.J. 324, 63 A.2d 526 (1949); Restatement, Judgments, § 54, comment d at 214–15 (1942). See generally 46 Am.Jur.2d, Judgments, § 443 (1969); 50 C.J.S. Judgments § 712b (1947). The test is whether, in light of the change in circumstances, the issues

---

2. Thus, according to Judge Bownes' reasoning in which I concur, an action may be maintained against defendant Town under 42 U.S.C. sec. 1983 for injunctive relief, but not for damages. However, no cause of action may be maintained against the Town for conspiracy under 42 U.S.C. sec. 1985 because a municipality acting in its sovereign capacity cannot be a conspirator. See 335 F.Supp. at 950. It should be noted further that plaintiff may properly proceed under the Civil Rights Act, regardless of whether the rights asserted are "personal" or "property" rights. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).
I find the allegations made in the Complaint sufficient to justify a claim of constitutional invalidity of the Town's ordinance as applied to plaintiff, alleging as it does an arbitrary and exclusionary purpose, see, e. g., National Land and Investment Company v. Kohn, 419 Pa. 504, 215 A.2d 597 (1965), and that the ordinance is unrelated to the public health, safety, morals and general welfare of the Town, in violation of the Fourteenth Amendment. Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Defendant alleges there is no actual controversy for purposes of declaratory relief under 28 U.S.C. sec. 2201. Defendant frankly admits, however, that had plaintiff's revised plan for a mobile home development been submitted to the Planning Board, there is very little question that a controversy would have arisen. In light of this admission, I see no need to require plaintiff to follow an entirely futile procedure as a condition precedent to its seeking redress in this Court. See, e. g., Potter v. McQueeney, 338 F.Supp. 1133, 1136 (D.R.I.1972).
I fail to see any material distinction between the posture of the present case, and the situation in "Steel Hill I" in which Judge Bownes rejected defendant's similar contentions as to exhaustion and abstention, 335 F.Supp. at 951.

**1148**

now raised were decided in the earlier case. Phillips Exeter Academy v. Gleason, 103 N.H. 197, 168 A.2d 489 (1961). This doctrine is particularly relevant in the zoning field, in light of the New Hampshire Supreme Court's recent decision that a landowner's application seeking a permit for a use which materially differs in nature and degree from a use applied for in prior proceedings involving the same property is not barred under the doctrine of res judicata. Bois v. City of Manchester, 306 A. 2d 778 (N.H.1973). *See* National Land and Investment Company v. Kohn, 419 Pa. 504, 215 A.2d 597, 607–08 (1965). ("Every zoning case involves a different set of facts and circumstances in light of which the constitutionality of a zoning ordinance must be tested. Therefore, it is impossible for us to say that any minimum acreage requirement is unconstitutional per se.")

■ It is the opinion of this Court that the plaintiff's alteration of its plan of development for the Steel Hill tract, as alleged in the Complaint, is of such overriding significance that the judgment rendered in "Steel Hill I", based as it was on a totally distinct proposal for the use of plaintiff's property, cannot serve as conclusive on the legal issues raised herein, and that the instant action is not, therefore, precluded on the theory of res judicata.[3] In reaching this conclusion, the Court takes particu-

lar note of the emphasis in the First Circuit's opinion in "Steel Hill I" on the "stop gap" nature of its qualified approval of the Town's zoning ordinance. It is highly significant that the proposed development therein involved was intended to *create* a demand for seasonal homes designed primarily for wealthy urbanites rather than serve to meet an already existing local need for first homes. In distinguishing such cases as National Land and Investment Co. v. Kohn, *supra,* and Appeal of Kit-Mar Builders, 439 Pa. 466, 268 A.2d 765 (1970), among other cases, Judge Coffin states:

" . . . appellant here does not seek to satisfy an already existing demand for suburban expansion, but rather seeks to create a demand in Sanbornton on behalf of wealthy residents of Megalopolis who might be willing to invest heavily in time and money to gain their own haven in bucolic surroundings." 469 F.2d at 961.

Owing to this distinction between "zoning out" natural population growth as opposed to restricting " 'visitors' who would own second homes", the Court stated that those cases dealing with alleged exclusionary zoning were not important to the inquiry then before it. 469 F.2d at 960.[4] The overwhelming significance of plaintiff's change in its plan of development, at least for res judicata purposes, is further accentuated

---

3. Defendant contends that a plan for a trailer park was introduced in evidence in the previous trial. However, it appears clear that in the prior litigation the only development plan in issue was use of the tract for a four season recreational community as opposed to permanent first homes. As Judge Bownes states:

"It is fair to find that the plaintiff never intended to develop the property as a trailer park and that the plan was a tactical gambit used in the 'education and selling process'." 338 F.Supp. at 303.

4. As Judge Bownes states in his opinion in "Steel Hill I", 338 F.Supp. 301, 306–7:

"Zoning is never permanent. Indeed it cannot be, for it has to meet the changing

needs of the community. . . . If the zoning laws of a town do become permanent barriers of exclusion and discrimination, there can always be resort to the courts."

In addition, he states:

"It is important to stress here that there was no evidence that the new zoning law was prompted by discrimination of any sort. Nor was there any showing of population pressures directly or indirectly impinging on the town. There is no evidence that the amendments constitute either snob zoning or exclusionary zoning." *Id.* at 306

elsewhere in the First Circuit's opinion in "Steel Hill I":

"We cannot think that expansion of population, even a very substantial one, seasonal or permanent, is by itself a legitimate basis for permissible objection. Were we to adjudicate this as a restriction for all time, and were the evidence of pressure from land-deprived and land-seeking outsiders more real, we might well come to a different conclusion. Where there is a natural population growth it has to go somewhere, unwelcome as it may be, and in that case we do not think it should be channelled by the happenstance of what town gets its veto in first." 469 F.2d at 962.

Recognizing the uncertainty of the proper balance between ecological and population pressures, the Court held that the town's ordinance "may properly stand for the present as a legitimate stop-gap measure". Id. at 962.

In the case now before the Court, plaintiff alleges that its revised plan of development is aimed at satisfying the primary housing needs of the low and moderate income groups of the region.[5] Through its offer of proof, plaintiff has presented to the Court several housing studies prepared by the Lakes Region Planning Commission, hereinafter, "LRPC", in which the Town of Sanbornton is an active member, which indicate that there is an actual shortage of suitable housing in the region for low and moderate income households.[6] Of course, these studies may give rise to debate and, indeed defendant takes issue with certain conclusions drawn by these studies and their relationship to plaintiff's proposed plan of development. Yet, the ultimate resolution of these factual issues must await trial on the merits. For purposes of the instant motion, the Court is convinced that such evidence raises a genuine issue of material fact which was not in issue

---

5. Plaintiff indicates that the proposed mobile home development of approximately 530 units will be erected over a 5-year period, that the units will cost between approximately $14,000. and $20,000., including the land, and is geared to fulfill the needs of year-round residents of the region in the income bracket of $7,000. to $11,000. per year. (Plaintiff's memorandum at 4).

6. See LRPC, "Housing Needs of Low and Moderate Income Families and Elderly Persons in the Lakes Region" at 4-1 June, 1973 (Pl's Exh. "A"). See also Central New Hampshire Regional Planning Commission, "Housing Market Study—Summary Report" (1972–73) (Pl's Exh. "B"); LeRoy et al., "Mobile Home Residents in New Hampshire" (Research Report No. 27, (May, 1973) (Pl's Exh. "C"); LRPC, "Initial Housing Element Study—Addendum" (June 1973) (Pl's Exh. "D").

Plaintiff has also brought to the Court's attention a recent newsletter dated May 13, 1974 from the LRPC in which the Commission's studies are summarized and commented upon:

"Based on LRPC housing studies, the following information has become evident:

* approximately 60% of the families in the Lakes Region cannot afford to purchase a conventionally financed home based on accepted financial standards;

* there is an inadequate supply of any type of sales housing for moderate income families;

* it is virtually impossible for low-income families to find a house within its financial ability to pay;

* there is an inadequate supply of rental housing for low and moderate income families;

* there is an inadequate supply of decent, safe and sanitary private housing in the Lakes Region for elderly persons;

* the employment of mobile homes to meet these needs has become increasingly prevalent.

To date, there are no alternatives to the mobile home in the Lakes Region for low and moderate-income families and elderly persons. In the face of these determined needs, we find unreasonable restrictions on mobile homes and parks increasing.

It is not my contention that such dwellings should not be subject to reasonable controls based on the individual requirements of each community. I believe, however, that each community must provide a good, healthy, and convenient location for such housing just to provide its residents with the opportunity for choices in housing types. Let's face it, condominiums do not cater to the local employee and wage scales."

**1150**

in "Steel Hill I", due to the different factual context of that case, and, therefore, defendant's argument that the instant matter is precluded by the earlier determination in "Steel Hill I" is without merit.[7]

### Moratorium

■ It is defendant's further contention that the Circuit Court's opinion in "Steel Hill I" implicitly, if not explicitly, sanctioned the Town's ordinance as a stop-gap measure to preserve the status quo until such time as the Town has sufficient opportunity to "plan with more precision for the future". The Circuit Court did indeed suggest that the Town take advantage of federal or state grants designed for planning purposes, 469 F.2d at 962, and that six-acre zoning "may well not indefinitely stand without more homework by the concerned parties." *Id.* Defendant reports that the "LRPC" was set up, pursuant to New Hampshire law (N.H.R.S.A. 36:45 et seq.) for the express purpose of preparing a coordinated plan of development for the region and that the Town of Sanbornton has supported the Commission wholeheartedly through its financial support and representation on the Board for several years.[8] Defendant suggests that the initial housing studies prepared by the "LRPC" are only preliminary steps in a total regional planning effort, and that until a comprehensive regional plan is completed, it would be premature to conclude that the "LRPC" recommendations would include a change in the zoning ordinance of San-

bornton to permit the type of development at the Steel Hill tract which is proposed herein by plaintiff.[9]

The Court does not take issue with the logic of awaiting a comprehensive regional plan for development before judicial interference with the status quo of regional land use. Indeed, when weighed in the balance with other factors, the maintenance of the status quo in Sanbornton pending a regional development plan may perhaps constitute a permissible zoning objective, at least temporarily. However, the Court has not been informed as to the length of time that would be involved in·such a "moratorium" and, furthermore, the Court must weigh the immediacy of the housing needs of the low to moderate income segment of the regional population in order to determine if those needs outweigh long-range regional planning considerations. Therefore, while this factor may become important at subsequent stages of this litigation, determination of the weight to be given regional planning considerations must also await the full development of a factual record at trial, and defendant's motion to dismiss cannot at this time be sustained on that ground.

### Collateral Estoppel and Limitations of Issues at Trial

While it is the opinion of this Court that the instant action is not barred by res judicata, there may indeed be certain issues litigated in the former suit which were conclusively determined therein and need not be relitigated in the in-

7. Defendant argues that its present zoning ordinance is non-exclusionary as it applies to plaintiff in that plaintiff is permitted by the ordinance to erect mobile homes on its property, as long as the three and six acre minimum lot requirements are satisfied. It is plaintiff's contention, however, that the Town's ordinance amounts to a *de facto* exclusion of such a use within the agricultural and forest conservation districts because the large lot restrictions render use of the tract for mobile home development economically prohibitive.

Defendant also alleges that the current ratio in Sanbornton of mobile homes to conventional housing evidences that the present ordinance is non-exclusionary. Without weighing evidence of the effect of the current zoning amendments on mobile home development in the Town, such a broad assertion cannot serve as grounds for dismissal.

8. *See* Affidavit of David G. Scott, Executive Director of the Lakes Region Planning Commission, submitted by defendant in support of its motion, at 1.

9. *See* Affidavit of Scott, at 2.

stant case. Professor Moore defines the doctrine of collateral estoppel as follows:

"Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended."

1B J. Moore, Federal Practice, ¶ 0.441 [2] at 3777. *See also* Morin v. J. H. Valliere Co., 309 A.2d 153, 155 (N.H. 1973).

▓▓▓ Defendant argues in particular that the problems of large scale development were determined conclusively in "Steel Hill I" and are not lessened, indeed may be increased, when the development is changed from houses to mobile homes, and therefore that relitigation of those issues (e. g. population density, adequacy of municipal services, change in rural character of the Town, etc.) is barred by collateral estoppel. Defendant ignores, however, the fact that a development designed to meet the primary housing needs of a segment of the regional population injects an entirely new factor into the zoning balance which was absent in "Steel Hill I", and therefore the so-called "evils" of large scale development must be cast in a different light. In addition, there appears to have been a great deal of conflicting testimony in the prior case concerning the topography and soil conditions of plaintiff's land. Presumably, those conditions in relation to the Steel Hill tract have not changed in such a short span of time. However, from Judge Bownes' opinion, it does not appear that his findings relative to such soil conditions can

be said to have been determinations upon which that judgment necessarily depended.[10] In addition, it is impossible on the record now before me to consider whether plaintiff has modified its plans for sewage disposal and other services in such a way as to obviate any adverse effects on the area's ecology or added burden to the Town's municipal services.

▓▓▓ Furthermore, defendant would have this Court read the prior decisions in "Steel Hill I" as evidencing a categorical approval of three-acre (as opposed to six-acre) minimum lot sizes for the Steel Hill tract. Judge Bownes did state that if his decision were based solely on the factors of health and safety, he would find a three-acre minimum for the Steel Hill Tract "adequate", but that a six-acre minimum was not reasonably necessary. 338 F.Supp. at 305. The Circuit Court's opinion states:

"The district court found that, as the Sanbornton Planning Board had itself determined, topography and soil conditions posed severe problems of pollution, improper sewage disposal, poor drainage and erosion to large-scale development of the Steel Hill tract, justifying imposition of the three-acre minimum lot size requirement in accordance with the public health. We have carefully read the conflicting trial testimony of the various experts who expressed an opinion on these matters and cannot say that the court's finding is clearly erroneous. In any event, appellant does not seem to challenge that ruling, but rather directs its argument to the unreasonableness of the six acre lot requirement." 469 F.2d at 960.

In analyzing these prior decisions, defendant states:

"It seems clear then that the language of the Circuit Court of Appeal's opin-

---

10. "If I were to decide this case based solely on the question of whether the lot sizes were reasonably necessary from the standpoint of health and safety, I would find that the three acre minimum provided adequate insurance for the problems of sewage dis-

posal and drainage that are inevitable in this type of soil and that six acre minimum was not reasonably necessary. But health standards are not the only standards." 338 F.Supp. at 305.

**1152**

ion which the Plaintiff relies so heavily upon would allow only the reduction of the six acre zoning to a three acre zone. The present plan which this Court is requested to impose upon the Town does not comply with even the three acre requirement, and therefore it does not appear that the remedy requested by the Petitioner can be granted as a matter of law." Defendant's Memorandum at 2.

However, defendant again ignores completely the fact that, in weighing the question of whether a particular zoning restriction is reasonable, *all* factors must be considered. For example, if natural population growth and housing needs in the area enter into the balance, which they did not in "Steel Hill I", and if the plaintiff's modified development plan provides reasonable assurances of avoiding the problems of pollution, improper sewage disposal, poor drainage, and erosion, perhaps the balancing process would lead to a different conclusion as to the reasonableness of even a three-acre minimum. In light of the changed circumstances, and on the record now before me, this Court cannot say that the reasonableness of the three-acre minimum was conclusively determined in the prior litigation.

Therefore, since plaintiff's change in its development plan has had such an overriding effect on the ultimate constitutional issues presented, it is difficult to determine on the present state of the record which issues litigated in the previous case, if any, must be considered to have been conclusively established for purposes of the present action. Thus I will reserve final ruling on this aspect of the case pending receipt of memoranda from the parties. It might also be suggested that, in addition, the parties submit an agreed statement of facts as to all issues which are not in dispute so as to facilitate an orderly trial, devoid of unnecessary repetition of evidence presented in the prior litigation.

Defendant's motion to dismiss and for judgment on the pleadings is hereby denied.