STEEL HILL DEVELOPMENT, INC.

v.

The TOWN OF SANBORNTON.

Civ. A. No. 73–280.

United States District Court,
D. New Hampshire.

Dec. 30, 1974.

David J. KillKelley, Nighswander, Lord, Martin & KillKelley, Laconia, N. H., for plaintiff.

Peter V. Millham, Wescott, Millham & Dyer, Laconia, N. H., for defendant.

## OPINION

PETTINE, Chief Judge.[*]

This case involves a second attempt by the plaintiff to have declared unconstitutional the zoning ordinance of the Town of Sanbornton as it relates to plaintiff's property located therein. The factual background leading up to the instant Complaint can be gleaned from the previous opinion of this Court as well as that of the Court of Appeals for the First Circuit, see Steel Hill Development, Inc. v. Town of Sanbornton, 338 F.Supp. 301 (D.N.H.), aff'd 469 F.2d 956 (1st Cir. 1972). These cases will hereinafter be referred to collectively as "Steel Hill I" with citation to the relevant opinion where necessary. Therefore, only a brief review of the essential facts established in the prior litigation is necessary.

The plaintiff corporation is the owner of approximately 500 acres of land acquired in 1969 and located within the Town of Sanbornton. Prior to March 9, 1971, the land owned by plaintiff (the "Steel Hill tract") was entirely within a zoning area requiring a minimum lot size of 35,000 square feet, or about three-fourths of an acre. On March 9, 1971, the defendant, by its Town Meeting, adopted amendments to the zoning ordinance. As a result of these amendments, approximately 70% of the Steel Hill tract is now within a zone requiring 6 acre minimum lot size and approximately 30% in an area zoned for 3 acre minimum lots. As a result of these zoning changes, plaintiff was unable to go forward with its proposed development of the Steel Hill tract, according to a "cluster" plan, to subdivide the tract into 500 to 515 family units comprising a four-season recreation community.

On February 17, 1972, this Court entered judgment for defendant Town finding, on the facts before it, that the zoning amendments were not so arbitrary or unreasonable as to deprive the plaintiff of any rights guaranteed under the United States Constitution. 338 F. Supp. 301. That decision was affirmed, in an opinion written by Chief Judge Coffin, 469 F.2d 956 (1st Cir. 1972).

The instant Complaint was filed on November 9, 1973, alleging that subsequent to the decision in the First Circuit in "Steel Hill I", the plaintiff has altered its plan of development from a four-season recreation community to a mobile home development which allegedly "will fulfill the overwhelming public need in the region for economical housing for all segments of society." Plaintiff further alleges that the lot size restrictions incorporated into the zoning ordinance make a mobile home development subdivision prohibitive, that therefore the ordinance is exclusionary, arbitrary, discriminatory, and totally unrelated to the public health, safety, morals and general welfare of the Town. Based on the foregoing allegations, plaintiff claims the ordinance is violative of New Hampshire Revised Statutes Annotated (N.H.R.S.A.) 31:60, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, as well as violative of the right to travel. Plaintiff seeks declaratory and injunctive relief; jurisdiction is alleged under 42 U.S.C. §§ 1983 and 1985.

Prior to trial defendant moved for judgment on the pleadings and for dismissal, primarily relying on the theory that the doctrines of res judicata and collateral estoppel would bar relitigation of the constitutionality of the Town's zoning ordinance as it pertains to plaintiff's property, an issue decided in defendant's favor in "Steel Hill I." As to the issue of res judicata (also referred to as "claim preclusion") this Court, 392 F.Supp. 1144, held in its memorandum opinion of June 25, 1974:

"It is the opinion of this Court that the plaintiff's alteration of its plan of development for the Steel Hill tract,

---

[*] Chief Judge, District of Rhode Island, sitting by designation.

as alleged in the Complaint, is of such overriding significance that the judgment rendered in 'Steel Hill I,' based as it was on a totally distinct proposal for the use of plaintiff's property, cannot serve as conclusive on the legal issues raised herein, and that the instant action is not, therefore, precluded on the theory of res judicata. In reaching this conclusion, the Court takes particular note of the emphasis in the First Circuit's opinion in 'Steel Hill I' on the 'stop gap' nature of its qualified approval of the Town's zoning ordinance. It is highly significant that the proposed development therein involved was intended to *create* a demand for seasonal homes designed primarily for wealthy urbanites rather than serve to meet an already existing local need for first homes." *Id.* at 1148 (footnote omitted; emphasis in original).

While this Court found no res judicata bar to the instant action, the question as to which *issues* were foreclosed herein by reason of collateral estoppel was reserved for subsequent determination. In particular, it remains defendant's position that the District Court in "Steel Hill I" determined that the three acre minimum lot size restrictions (affecting approximately 30% of the Steel Hill tract) were reasonable and justified to protect the public health, clearly a legitimate zoning objective, *see* Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and that this finding was affirmed by the Court of Appeals and is binding on this Court in the instant case, despite the change in the type of development proposed.

This Court reserved ruling on this issue prior to trial.[1] At this stage of the

proceedings, the question of whether the reasonableness of three acre minimum lot size restrictions on the Steel Hill tract is foreclosed by the decisions in "Steel Hill I" is again before me by way of a motion to dismiss on behalf of the defendant at the close of plaintiff's case. Fed.R.Civ.P. 41(b). The record is sufficiently clear at this point to overcome the Court's earlier reluctance to rule on this point.

It is settled that the following criteria must be answered in the affirmative before an issue will be considered concluded under the doctrine of collateral estoppel:

". . . whether the issue sought to be concluded is the same as that involved in the prior action; was litigated in the prior action; was in fact judicially determined in the prior action; and whether the judgment in the prior action was dependent upon the determination made of the issue." 1B, J. Moore, Federal Practice, ¶ 0.443 [1] at 3902.

Two specific passages from the "Steel Hill I" decisions point unequivocally towards an affirmative answer to each of the aforementioned criteria. In the District Court, Judge Bownes stated as follows:

"If I were to decide this case based solely on the question of whether the lot sizes were reasonably necessary from the standpoint of health and safety, I would find that the three acre minimum provided adequate insurance for the problems of sewage disposal and drainage that are inevitable in this type of soil and that the six acre minimum was not reasonably necessary." 338 F.Supp. at 305.

Any doubts that the above quoted language was not a judicial determination

1. The reason for this Court's reservation of decision on this issue was expressed in my June 25, 1974 memorandum opinion, 392 F. Supp. at 1152: ". . . if natural population growth and housing needs in the area enter into the balance, which they did not in 'Steel Hill I,' and if the plaintiff's modified development plan provides reasonable assurances of avoiding the problems of pollution, improper sewage disposal, poor drainage, and erosion, perhaps the balancing process would lead to a different conclusion as to the reasonableness of even a three-acre minimum."

of reasonableness from the standpoint of health and safety, or that the decision as to the reasonableness of three acre minimum lot sizes was not dependent on this finding regarding health and safety, are laid to rest by the express holding of the appellate court:

> "The district court *found* that, as the Sanbornton Planning Board had itself determined topograph and soil conditions posed severe problems of pollution, improper sewage disposal, poor drainage and erosion to large-scale development of the Steel Hill tract, *justifying imposition of the three-acre minimum lot size requirement in accordance with the public health.* We have carefully read the conflicting trial testimony of the various experts who expressed an opinion on these matters and cannot say that the court's finding is clearly erroneous. In any event, appellant does not seem to challenge that ruling, but rather directs its argument to the unreasonableness of the six acre lot requirement." 469 F.2d at 960 (emphasis added).

Thus, regardless of any arguable ambiguity as to the basis of the District Court's finding regarding three acre minimum zoning, the Court of Appeals unmistakably interpreted the lower court opinion as upholding such minimum lot size restrictions on the basis of public health.

> "If a judgment has been reviewed by an appellate court, the appellate court's judgment, insofar as it differs from the judgment reviewed, determines what is concluded under the doctrines of res judicata and collateral estoppel." 1B, J. Moore, Federal Practice, ¶ 0.416 [1] at 2201.

Plaintiff obviously sought a determination as to the reasonableness of *both* the three and six acre restrictions in its previous complaint in "Steel Hill I" and it cannot now claim that the three acre issue was not before the courts for determination.

■ Thus, even if the three acre restrictions were additionally found to be justified on the more expansive "general welfare" rationale employed in relation to the six acre restrictions, the mere existence of another possible ground for a judgment does not negate the collateral estoppel effect of a determination based on the more narrow findings. *See* Irving National Bank v. Law, 10 F.2d 721 (2d Cir. 1926). *See generally,* J. Moore, *supra,* paragraph 0.443 [5].[2]

Plaintiff would urge, however, that the issue of "reasonableness" as it relates to the three acre restrictions is not the identical issue that was before the courts in "Steel Hill I" by virtue of a subsequent change in facts, to wit, the modification of its development plan from a proposal for "four season recreational homes" to be marketed to relatively prosperous vacationers, to a proposal for a mobile home condominium development geared toward meeting the primary housing needs of the low and moderate income residents of the region.

■ This Court expressly reserved ruling on the question of the effect of a change in development plan on the conclusiveness of the prior determination regarding three acre zoning so that it might explore more fully the exact nature of the change in plan as it related to sewage disposal and the newly injected "exclusionary zoning" issue left open by the decisions in "Steel Hill I." *See* note 1 *supra.* After considering plain-

---

2. *Cf.* Woods v. Interstate Realty Co., 337 U.S. 535, 537, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949) (". . . where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*") *Accord* Diagor Shipping Corporation v. Union Tank Car Company, 371 F.2d 722 (9th Cir. 1967).

It appears clear from the opinion of the Court of Appeals in "Steel Hill I" that even if the Court were to have rejected the "general welfare" theory in relation to the six acre issue, it upheld the three acre restrictions on an entirely different ground, namely on the basis of public health.

tiff's evidence in this case, and once again reviewing the transcript of the prior trial and the decisions rendered in "Steel Hill I," the Court finds that the issue of the reasonableness of three acre minimum lot zoning, as it relates to plaintiff's property now in question, has been concluded in favor of the defendant and that such a finding is binding on this Court by reason of collateral estoppel, notwithstanding the plaintiff's modification of its development plan.

■■ In reaching this conclusion, it is most helpful to analyze precisely what *has not* changed subsequent to the decisions in "Steel Hill I." Certainly no evidence has been adduced by plaintiff to indicate that the natural conditions of the land comprising the Steel Hill tract have undergone any change in recent years. To be sure, the general topography, slope and soil conditions which were before the Court in "Steel Hill I" are the identical conditions before me at this trial. While plaintiff has presented different witnesses at this trial relating to this issue, and new test pits were per-

formed in order to analyze the acceptability of the soil for purposes of septic tank disposal (testimony of Harrow, Keller, Mayo, Cowan), it is clear that collateral estoppel cannot be avoided by discovery and introduction of new evidence bearing on a fact in issue in the absence of a subsequent event which creates a new legal situation. Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 33, 42 L.Ed. 355 (1897).[3]

Secondly, plaintiff's own witness testified that the modified cluster plan for a mobile home development involves essentially the same number of units on the same amount of land as was proposed in the initial cluster plan at issue in "Steel Hill I," (Testimony of Mayo). Furthermore, Mr. Joseph Pepe, of the plaintiff corporation, admitted under cross-examination that the present plan was designed under the same cluster development concept as the previous plan, and that the locations for each unit were similar to the site locations proposed in the original plan.[4]

3. Plaintiff argues at page 45 of its memorandum that:

"The Town of Sanbornton has no real justification for its exclusionary zoning. The plaintiff's experts testified that the proposed mobile home development conforms to good land planning practices *(Testimony of Mr. Harrow)*, it conforms to good engineering practices *(Testimony of Mr. Keller and Mr. Cowan)* and there will be no adverse effect upon the welfare, health or safety of the Town if the development is allowed to proceed."

Furthermore, it is plaintiff's contention that the Sanbornton Comprehensive Town Plan (Pl. Exh. 17) indicates that the Steel Hill tract is situated in an area found to be suitable for almost all types of development. (Pl. memorandum at 72 et seq.) This evidence was either before the Court in "Steel Hill I" or is simply different proof going to the issues before the Court in the earlier proceeding, which could have been presented at that time. Under the doctrine of collateral estoppel I am not free to re-evaluate this evidence in light of the Court's earlier finding with respect to the three acre issue, and I am bound by the earlier determination.

4. In its Memorandum at page 107 et seq., plaintiff attempts to distinguish the conventionally built homes proposed in "Steel Hill I" from the mobile homes proposed herein in relation to dangers from erosion and sewage. Apparently, plaintiff feels that this distinction is a sufficient change of factual circumstances to justify a redetermination of the three acre issue. With this contention I cannot agree. In the first place, there is nothing in the opinions of the Courts in "Steel Hill I" to indicate that the *type* of housing to be placed on the tract bore any significant relationship to the determination that three acre minimum lot restrictions were reasonable from the standpoint of public health. The Courts were obviously concerned with the *density* of the proposed development in relation to soil conditions and topography, not to the issue of whether mobile homes or conventional homes were to be placed on the sites. Secondly, this Court is unconvinced from the evidence put forward by plaintiff that the placing of mobile homes on the same number of sites on which conventional homes were to be placed in "Steel Hill I" would result in any significant distinctions with respect to the concerns which

Finally it is clear that the engineering to be adopted by the plaintiff in attempting to overcome the problems inherent in septic tank disposal on this tract (i. e., on rocky and sloping land in which the natural soil layer above the impermeable sub-strata is relatively narrow) has not changed in any significant respect since the decisions rendered in the prior case. Plaintiff continues to propose the use of fill to form raised leaching fields designed to increase the layer of permeable soil for proper septic disposal.

Thus, with the topography unchanged, as well as a proposal to build the same number of units on essentially the same sites, and without any modification in plaintiff's design for septic tank disposal, the conclusion seems inescapable that this Court is presented with an attempt by the plaintiff to have relitigated the identical question concluded by the prior trial and appeal, an attempt which must fail under the doctrine of collateral estoppel.

■■ A change in the material facts underlying a prior adjudication may well necessitate a redetermination of certain issues in light of the changed circumstances. *See* Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599–602, 68 S.Ct. 715, 720–721, 92 L.Ed. 898 (1948); United States v. Certain Land at Irving Place and 16th Street, 415 F. 2d 265, 269 (2d Cir. 1969). However, the mere change in the type of units to be placed on the site in question, the economic status of the proposed buyers of such homes, or the proposed change in the form of ownership of those units, cannot be material in opening the door to relitigation of three acre minimum zoning once such a minimum acreage requirement has been finally adjudicated to be reasonable on the basis of public health.[5]

Plaintiff argues further that the doctrine of collateral estoppel should not bar relitigation of the three acre issue in that plaintiff is asserting the constitutional rights of prospective buyers of Steel Hill homes, issues not before the Court in "Steel Hill I." It is asserted that new issues are before the Court, namely that the ordinance infringes on the right to travel and creates a suspect classification (discrimination on the basis of wealth), thus requiring the defendant to show a "compelling interest" in order to justify its ordinance. A mere "substantial relation" to the public health, safety, morals or general welfare

led to the earlier finding on the three acre issue. In fact, it might be argued that seasonal "second" homes, as was before the Court in "Steel Hill I," would be occupied less frequently than mobile homes designed for "first" homes of permanent residents and would thus result in a lesser environmental impact. For this reason, the Court finds unpersuasive the testimony adduced by plaintiff concerning differences in sewerage discharge as between mobile homes and conventional "stick built" homes. (Testimony of Beitler)

5. If there were some proof that the Town was not willing to meet its responsibilities of providing adequate services to satisfy the needs of natural population growth, and that this was the primary motivation behind the three acre restriction, then the Town would face a heavy burden in justifying large minimum lot areas on that basis alone. *See* National Land and Investment Company v. Kohn, 419 Pa. 504, 215 A.2d 597 (1965); Appeal of Girsh, 437 Pa. 237, 263 A.2d 395 (1970); Oakwood at Madison, Inc. v. Township of Madison, 117 N.J.Super. 11, 283 A.2d 353 (1971). Yet the Courts in "Steel Hill I" did not rest a decision concerning the reasonableness of three acre zoning on an "additional burden" analysis, but found that *natural* conditions of the soil, beyond the control of the municipality, made reasonable the three acre restrictions in order to guard against improper sewage disposal and erosion. As to the three acre zoning at the Steel Hill tract, the Court did not accept the evidence that the municipality's primary purpose was to avoid additional burdens upon the administration of public services, or to exclude a particular type of housing. Even those Courts that have given the closest scrutiny to the use of lot size restrictions as an exclusionary device have recognized that natural conditions, beyond the control of the municipality, might justify an otherwise unreasonable density regulation. *National Land, supra; Oakwood at Madison, Inc., supra.*

of the community, the standard of review employed in "Steel Hill I," *see* 469 F.2d at 960, is alleged to be inapplicable to these changed circumstances. I cannot accept plaintiff's analysis in this regard.

Even assuming *arguendo* that this plaintiff has standing to assert the constitutional rights of prospective low-income homeowners who are non-parties,[6] the circumstances herein do not require application of a "compelling interest" or "least restrictive alternative" test.

■ Plaintiff's assertion that the right to travel is a "fundamental right" triggering a "compelling interest" standard of review under the equal protection clause cannot be disputed. Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Cole v. Housing Authority of City of Newport, 312 F.Supp. 692 (D.R. I.), aff'd 435 F.2d 807 (1st Cir. 1970). However, in each of the aforementioned cases, the issue under consideration was the validity of durational residency requirements which fell unequally on, and to the prejudice of, newcomers vis a vis long-term residents of a particular area. I fail to find an analogy in the present ordinance which affects all persons similarly, non-residents and residents alike. There having been shown no legislative classification falling unequally on outsiders, it cannot be said that the ordinance must be judged under a compelling interest standard.

■ Plaintiff also argues that the Town's ordinance discriminates against low and moderate income persons and as such is subject to strict judicial scrutiny, a standard not relevant in "Steel Hill I." Plaintiff relies on San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) for the proposition that wealth is a suspect classification under the equal protection clause. *Rodriguez,* however, rejected the theory that wealth discrimination alone is an adequate basis for invoking the strict scrutiny standard, 411 U.S. at 29, 93 S.Ct. 1278. The Court held that in the absence of evidence of discrimination against a "definable category of 'poor' people" or evidence of an absolute deprivation by virtue of a complete inability to pay for some desired benefit, the strict scrutiny standard would not be invoked. I cannot find from the plaintiff's evidence that the *Rodriguez* criteria have been satisfied, and thus I decline to employ the strict scrutiny standard on that basis. Ybarra v. City of the Town of Los Altos Hills, 503 F.2d 250 (9th Cir. 1974).

■ Since I find that this Court must look to the identical standard of judicial review as was employed in "Steel Hill I" in considering the constitutionality of this ordinance under the present facts, a departure from the doctrine of collateral estoppel on the basis

---

6. The Court notes that the question of plaintiff's standing to assert the constitutional rights of non-parties received less than adequate treatment in plaintiff's Memorandum. Plaintiff merely cites Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L. Ed.2d 797 (1974) to support its position, failing to recognize that in *Belle Terre* the landlord himself had been cited for violating a city ordinance and three tenants had joined in the action. The issue of standing to raise the rights of third persons who are non-parties has received much attention in the case law, and it is far from clear whether, according to these precedents, the plaintiff herein has such standing. *See* Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). *See also* Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 24 L. Ed.2d 386 (1969); Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, in light of this Court's ruling with regard to the substance of the claims raised on behalf of non-parties, I need not decide the issue of standing.

of the applicability of a different legal standard is not warranted.[7]

In so ruling, the Court does not intend to belittle plaintiff's evidence of a genuine need in the region for some type of additional housing designed to meet the needs of the low and moderate income residents of the region. Although the extent of such need and the proposed development's suitability to meet such need remains open to some difference of opinion based on the evidence brought forward by plaintiff, it cannot be said that plaintiff has simply fabricated a need in order to justify its proposed development.[8] But even viewing the evidence on this question in the light most favorable to the plaintiff, I must find the earlier three-acre ruling to be conclusive. It is clear from the entire history of this litigation that Sanbornton has not zoned with the implied purpose of keeping any particular socio-economic group from residing within its borders. On the other hand, the Town has strenuously urged that the Steel Hill tract is simply not suitable for high density development and the Courts have agreed that a three acre lot size restriction, as it pertains to the Steel Hill tract, is reasonable due to the natural conditions of soil and topography. *See* Salamar Builders Corp. v. Tuttle, 29 N.Y.2d 221, 325 N.Y.S.2d 933, 275 N.E.2d 585 (1971). This Court would be engaged in a most unwarranted usurpation of judicial authority were it now to hold that the Town must permit a high density development at the Steel Hill site to meet a regional need for low and moderate income housing, despite an earlier finding that the Town acted reasonably in determining that this tract could not accommodate any housing at a density in excess of three acre lots.[9] This Court

7. Plaintiff's argument that the State has subsequent to "Steel Hill I" pre-empted the field of water and sewage regulation by virtue of state public health standards is unpersuasive. Fillmore v. Town of Sanbornton, 319 A.2d 103 (N.H.1974) stands as authority for the proposition that a municipality may enforce stricter requirements with regard to health regulations than those that might be required to receive state approval of a particular project. Furthermore, the New Hampshire Sanitary Laws and Regulations upon which plaintiff relies (Pl.Exh. 43) specifically refer to *minimum* requirements, and I do not find that by virtue of these regulations, a municipality is powerless to require stricter standards. *See, e. g.* Exh. 43, Regulation C, VI:

"A minimum of 10,000 feet shall be provided for each mobile home space. *However, soil conditions may require larger areas to be provided.*" (emphasis added)

8. As to the regional need for low and moderate income housing *see* Lakes Region Planning Commission, Initial Housing Element Addendum, 1973 at 4–10 (Exh. 19–A); Lakes Region Planning Commission, Overall Program Design, 1974–1975 at 14 (Exh. 25) ("Better quality and greater quantities of housing for low and moderate-income families and elderly is critical."); Lakes Region Planning Commission, Housing Needs Survey, 1973 (Exh. 20). As to the feasibility of mobile homes to meet such a need, *see* Lakes Region Planning Commission, Mobile Home Living in the Lakes Region, 1973 (Exh. 35); LeRoy et al, Mobile Home Residents in New Hampshire (1973) (Exh. 33). Several of plaintiff's witnesses testified to the housing shortage among low and moderate income residents of the Lakes Region, (Testimony of Simoneau, Hamilton, Harrow) and others testified concerning the feasibility and desirability of mobile homes to meet such a need (Testimony of Pepe, Neal, Plant, Beitler, Sparks (and Exh. 72)).

Defendant, by way of cross examination, attempted to demonstrate that the housing shortage was not as critical as plaintiff would represent and that plaintiff's mobile home development would fail to meet the needs of the low and moderate income residents of the region due to cost, distance from employment and shopping centers, and housing preferences.

9. Plaintiff cites the Court to the following language from Village of Euclid v. Ambler Realty Co., *supra*, 272 U.S. at 390, 47 S.Ct. at 119:

"It is not meant by this, however, to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way."

In light of the earlier determination regarding three acre zoning, this Court cannot say that this case falls within any "exception" to the basic concepts of "Euclidean" zoning.

might have come to a different conclusion if it were faced with this issue initially, but the purpose for which collateral estoppel was created—to prevent relitigation of issues once judicially determined—mandates that I accept the prior finding as conclusive herein.

Such a ruling is not intended to imply approval of Sanbornton's entire zoning scheme as it relates to all land within the Town, nor is that issue before the Court.[10] The only question before this Court is whether the defendant's zoning *ordinance, as it affects the land owned by the plaintiff,* is so clearly arbitrary and unreasonable as to constitute a deprivation of constitutionally protected rights. In light of the prior finding relative to the reasonableness of three acre zoning at the Steel Hill tract, I cannot so hold. I would repeat, however, the caveat as expressed by the District Court that should the zoning laws of the Town become permanent barriers of exclusion and discrimination, redress may always be sought in the courts, 338 F. Supp. at 307.

■ It is encouraging that Sanbornton has begun to chart its course of future land use development through its participation in the Lakes Region Plan-

ning Commission. It is hoped that through such participation the Town will not avoid its obligations of cooperating with neighboring communities to solve regional land use and housing problems as they relate to *all* segments of the regional population. Surely, as the Court of Appeals recognized, natural population growth should not be "channelled by the happenstance of what town gets its veto in first," 469 F.2d at 962. On the other hand it is certainly not the model of good planning to channel regional population growth by the happenstance of which developer wins its lawsuit first. The concept of planned regional growth has become increasingly recognized as a recommended mode of land use planning. *See* Note, 58 Cornell L.Rev. 1035, 1052 n. 76 and citations therein; N.H.R.S.A. 36:45 et seq.[11] Indeed, zoning to control density and for purposes of orderly growth has increasingly become accepted as permissible police power objectives. *See* Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S. Ct. 1536, 39 L.Ed.2d 797 (1974); Golden v. Planning Board of Town of Ramapo, 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (1972), appeal dismissed, 409 U.S. 1003, 93 S.Ct. 440, 34 L.Ed.2d 294 (1972); J. D. Construction Corp. v.

Plaintiff would also have this Court redetermine the issue of the Town's motivation in amending its zoning ordinance.

"There should be no question that the motive of the Town of Sanbornton in rezoning the Steel Hill tract to six acres in 1971 and the elimination of mobile home parks in 1972 was not because of any alleged soils 'problems' but was specifically to prohibit and thwart any development of mobile home parks in the Town." Plaintiff's memorandum, at 50.

However, the Courts in "Steel Hill I" specifically found that the *three* acre restrictions at the Steel Hill site were in accordance with the permissible zoning objective of protection of public health, and that finding forecloses a new finding by this Court that such a restriction was simply designed to exclude a particular type of housing.

10. It cannot be said that any minimum acre zoning requirement is unconstitutional *per se*, National Land and Investment Company v. Kohn, 419 Pa. 504, 215 A.2d 597, 607–608,

and to determine the constitutionality of a zoning ordinance beyond the facts and circumstances of a particular case would be to do so in a factual vacuum, which this Court will not do. Home Life Insurance Co. v. Board of Adjustment, 393 Pa. 447, 143 A.2d 21 (1958).

11. Plaintiff attempts to summarize in its memorandum the attempts made by other municipalities in the region to restrict or exclude mobile homes from their borders (Pl. memorandum at 31). I find such an analysis lends greater support to the need for *regional* planning with regard to the placement of mobile homes. Plaintiff has also shown that there presently exists a demand in the Lakes Region for 527 mobile homes. (Pl. Exh. 26 at 4–3) Sound regional planning might well dictate that the obligation to meet this need be spread throughout the region, whereas plaintiff's proposal would insist that the Town of Sanbornton bear the *entire* burden of satisfying the regional need for mobile homes.

Board of Adjustment of Freehold, 119 N.J.Super. 140, 290 A.2d 452 (Law Div. 1972). While under proper circumstances a judicial remedy may be the only redress against arbitrary and unreasonable zoning restrictions, such an issue, once determined, must be laid to rest unless a change has occurred which should subject the prior determination to rescrutiny. No such change has been shown by plaintiff. to justify this Court's redetermination of the three acre question.

Since plaintiff's mobile home development plan fails to comply with even a three acre lot size requirement, a verdict may be directed for the defendant without the necessity of this Court reaching the issue of the reasonableness of six acre zoning in light of plaintiff's modified development plan.

Plaintiff's Complaint is hereby dismissed, pursuant to Rule 41(b), Fed.R. Civ.P.